IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Ste. 400<br>Washington, DC 20005,<br><br>            Plaintiff,<br><br>     v.<br><br>IOWA VALUES<br>15920 Hickman Road, Ste. 400, PMB 413<br>Clive, IA 50325,<br><br>            Defendant. | Civil Action No. _____ |

**COMPLAINT**

In the summer of 2019, Defendant Iowa Values launched a comprehensive campaign to support the reelection of U.S. Senator Joni Ernst. Defendant's fundraising and strategy documents establish its "mission" and "focus" of supporting Senator Ernst's reelection effort. Its "election long effort" to "highlight the work of Sen. Joni Ernst" included expending substantial funds on digital ads supporting Senator Ernst's reelection campaign.

Defendant is a nonprofit 501(c)(4) corporation; it is not registered as a federal political committee. However, federal campaign finance laws require an organization like Iowa Values, which accepts contributions or makes expenditures in excess of $1,000 in a calendar year, and whose "major purpose" is campaign activity, to register with the Federal Election Commission ("FEC") as a political committee and file periodic reports disclosing its contributions, expenditures, and debts. In failing to do so, Defendant violated federal law and harmed Plaintiff

1

Campaign Legal Center ("CLC"), and the electorate at large, by concealing critical information about its sources of funding and the recipients of its spending in support of Senator Ernst.

CLC filed an administrative complaint alerting the FEC to these violations in December 2019, but the FEC has failed to take action on the matter for more than thirteen months. On October 14, 2020, a court in this District issued an order finding that the FEC's failure to act on CLC's administrative complaint was contrary to law and ordering the Commission to conform by taking action on CLC's administrative complaint within 90 days, *i.e.*, by January 12, 2021. The FEC did not act and on February 11, 2021, the Court issued an order declaring that the FEC has failed to conform to the October 14 Order and recognizing CLC's right to bring this lawsuit against Iowa Values under the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30109(a)(8)(C).

\*   \*   \*

1.  Plaintiff CLC brings this action under 52 U.S.C. § 30109(a)(8)(C), to remedy violations of FECA's registration and reporting requirements for political committees, 52 U.S.C. §§ 30102-30104, by Defendant Iowa Values.

2.  Defendant's strategic documents, fundraising appeals, and digital advertising in support of Senator Ernst indicate that as of the summer of 2019, Defendant met the definition of "political committee" under FECA, and thus its failure to register and report as a federal political committee violated FECA, 52 U.S.C. §§ 30102-30104.

3.  Plaintiff has a statutory right to the information that Defendant is required to disclose under FECA. Plaintiff has been and continues to be injured by Defendant's failure to disclose this statutorily required information regarding its contributions, expenditures, and debts, which Plaintiff relies on to carry out its organizational activities, including assisting voters in evaluating candidates for public office.

4. To remedy this injury, Plaintiff filed an administrative complaint with the FEC on December 19, 2019, alleging that Defendant had violated FECA by failing to register and report as a political committee as required by 52 U.S.C. §§ 30102-30104. Despite the substantial evidence in CLC's administrative complaint establishing that Iowa Values violated FECA, the FEC has failed to act on the matter.

5. On June 30, 2020, CLC brought a civil action against the FEC, under 52 U.S.C. § 30109(a)(8)(A), to remedy the harm caused by the FEC's unlawful inaction on the administrative complaint. The FEC failed to appear or otherwise defend the lawsuit, and the clerk entered a default against the agency. On October 14, 2020, the Court issued a default judgment order against the FEC, finding that the agency's failure to act on Plaintiff's administrative complaint was contrary to law and ordering the FEC to conform by acting on CLC's administrative complaint within 90 days. *See* Order, *Campaign Legal Center v. FEC*, No. 20-1778 (D.D.C. Oct. 14, 2020).

6. The 90-day period for the FEC to conform to the default judgment order expired on January 12, 2021, with no action by the FEC. On February 11, 2021, the Court issued an Order declaring that the FEC "has failed to conform" to the October 14 Order and ordering that, "[p]ursuant to 52 U.S.C. § 30109(a)(8)(C), Plaintiff Campaign Legal Center may bring 'a civil action to remedy the violation involved in the original complaint'" against Iowa Values. Order, *Campaign Legal Center v. FEC*, No. 20-1778 (D.D.C. Feb. 11, 2021). Plaintiff now brings this civil action against Iowa Values "to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 52 U.S.C. § 30109(a)(8)(C) and 28 U.S.C. § 1331. This Court has personal jurisdiction over Defendant Iowa

Values, which is incorporated under the laws of the District of Columbia, pursuant to D.C. Code Ann. § 13-422. *See* Fed. R. Civ. P. 4(k).

8. Venue lies in this district under 28 U.S.C. § 1391(b)(1), (2), (c)(2).

9. This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201(a) and 2202.

## THE PARTIES

10. Plaintiff Campaign Legal Center ("CLC") is a nonpartisan, nonprofit organization that works to strengthen American democracy through legal advocacy at the federal, state, and local levels, and to ensure that the public at large has access to critical information regarding the financing of U.S. election campaigns.

11. As part of this work, CLC conducts research, publishes reports and articles, and regularly provides expert legal analysis to the media. CLC also litigates campaign finance matters throughout the country; files administrative complaints with the FEC to seek enforcement action against individuals and organizations that violate the law; participates in rulemakings and advisory opinion proceedings before the FEC to ensure that the Commission is properly interpreting and enforcing federal campaign finance laws; and advocates for legislative reform measures at the federal, state, and local levels of government.

12. CLC relies on the accurate, timely, and complete reporting of campaign finance information to carry out activities central to its mission, including producing reports and other materials to inform the public about campaign spending and the true sources and scope of candidates' financial support. These activities are obstructed, however, when information that is subject to mandatory disclosure under FECA is not publicly available.

13. CLC expends significant resources assisting members of the media in their investigations into candidates' financial support and their relationships with donors, so that the public is fully equipped with the information necessary to evaluate candidates and political messaging, and to cast informed votes on Election Day.

14. CLC also uses its analyses of federal campaign finance data to support its administrative practice before the FEC and state campaign finance agencies, and to defend campaign finance laws in its active docket in federal and state courts.

15. Defendant Iowa Values is a tax-exempt, nonprofit 501(c)(4) corporation incorporated under the laws of the District of Columbia.[1] On information and belief, Iowa Values's business address is 15920 Hickman Road, Ste. 400, PMB 413, Clive, IA 50325, and it also has an office at 1331 SE University Ave., Waukee, IA 50263.

## LEGAL FRAMEWORK

### *Political Committee Status Under FECA*

16. FECA and FEC regulations establish organizational, registration, and reporting requirements for federal political committees. 52 U.S.C. §§ 30102-30104. FECA defines a "political committee" as "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year." 52 U.S.C. § 30101(4)(A). "Contribution" is defined to include "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal

---

[1] *See* Iowa Values, 2019 Biennial Report for a Foreign Nonprofit Corporation, Iowa Sec'y of State (filed Feb. 26, 2019), *available at* https://sos.iowa.gov/search/business/search.aspx (search by "Business Number 549680," view "Filings," and select "Cert. No. A19549680" (Biennial Report)) (last visited Feb. 8, 2021).

5

office." 52 U.S.C. § 30101(8)(A)(i). "Expenditure" is similarly defined to include "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(9)(A)(i).

17. In *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), the Supreme Court construed FECA's definition of "political committee" to "only encompass organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate." *Id.* at 79. In *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986), the Court invoked the "major purpose" test again in the context of assessing the campaign spending of a 501(c)(4) corporation, explaining that if an organization's election-related activities "become so extensive that the *organization's major purpose may be regarded as campaign activity*, the corporation would be classified as a political committee." *Id.* at 262 (emphasis added). In such circumstances, the Court explained, the corporation would become "subject to the obligations and restrictions applicable to those groups whose primary objective is to influence political campaigns." *Id.* And in *McConnell v. FEC*, 540 U.S. 93 (2003), the Supreme Court restated the "major purpose" standard for political committee status as articulated in *Buckley*. *Id.* at 170 n.64.

18. The FEC has explained that:

> [D]etermining political committee status under FECA, as modified by the Supreme Court, requires an analysis of both an organization's specific conduct—whether it received $1,000 in contributions or made $1,000 in expenditures—as well as its overall conduct—whether its major purpose is Federal campaign activity (*i.e.*, the nomination or election of a Federal candidate).

Supplemental Explanation and Justification on Political Committee Status, 72 Fed. Reg. 5595, 5597 (Feb. 7, 2007).

19. Relevant evidence of an organization's major purpose "may reach well beyond publicly available advertisements." *Id.* at 5601. An organization's total spending, public

6

statements, communications with donors, and fundraising appeals are all pertinent to determining whether the organization has the "major purpose" of supporting or opposing the nomination or election of federal candidates. *Id.*; *see FEC v. Malenick*, 310 F. Supp. 2d 230, 234-36 (D.D.C. 2004); *FEC v. GOPAC, Inc.*, 917 F. Supp. 851, 859 (D.D.C. 1996); FEC Advisory Op. 2006-20, at 4-5 (Unity 08). Likewise relevant are "statements by the organization that characterize its activities and purposes." Supplemental Explanation and Justification on Political Committee Status, 72 Fed. Reg. at 5601.

20. Accordingly, there is a two-prong test used to determine political committee status under federal election law: (1) whether an organization has received "contributions" or made "expenditures" in excess of $1,000 in a calendar year, and, if so, (2) whether the organization's "major purpose" is the "nomination or election of a candidate," as required by *Buckley*.

21. An organization that meets the definition of "political committee" under the two-prong analysis must file a statement of organization with the FEC, 52 U.S.C. § 30103, 11 C.F.R. § 102.1(d); adhere to the organizational and recordkeeping requirements of 52 U.S.C. § 30102 and 11 C.F.R. §§ 102.7, 102.9; and file periodic reports of its contributions, expenditures, and debts with the FEC, 52 U.S.C. § 30104; 11 C.F.R. §§ 104.1, 104.3-104.5, 104.8, 104.9, 104.11-13.[2]

22. The periodic reports that a political committees files with the FEC must publicly disclose information about the committee's contributions and expenditures, including the identity of any donor who has contributed $200 or more to the committee within the calendar year. 52

---

[2] In addition, a "political committee" that makes contributions to federal candidates, including in-kind contributions or coordinated communications, is subject to limits on the contributions it receives, 52 U.S.C. § 30116(a)(1), (a)(2), (f), and may not accept contributions from corporations. *Id.* § 30118(a). The FEC has concluded that that a political committee that "intends to make only independent expenditures" and "will not make any monetary or in-kind contributions to any other political committee or organization" is not subject to FECA's contribution limits. FEC Advisory Op. 2010-11, at 2 (Commonsense Ten).

U.S.C. § 30104(b)(3)(A); *see also* 11 C.F.R. § 104.3(a)(4). Courts have repeatedly recognized the importance of campaign finance disclosure in informing the electorate about sources of political speech. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 369 (2010) ("[T]he public has an interest in knowing who is speaking about a candidate shortly before an election."); *Stop This Insanity Inc. Emp. Leadership Fund v. FEC*, 761 F.3d 10, 16 (D.C. Cir. 2014) (emphasizing the "First Amendment rights of the public to know the identity of those who seek to influence their vote"); *Citizens for Responsibility and Ethics in Washington v. FEC*, 209 F. Supp. 3d 77, 81 (D.D.C. 2016) ("[D]isclosure 'open[s] the basic process of our federal election[s] to public view,' . . . by 'provid[ing] the electorate with information' concerning the sources and outlets for campaign money" (internal citations omitted)).

### *Private Right of Action Under FECA*

23. Any person who believes there has been a violation of FECA may file a sworn complaint with the FEC pursuant to 52 U.S.C. § 30109(a)(1). If the FEC fails to act on the complaint within 120 days, FECA provides that the administrative complainant may file a civil action against the FEC, and "the court may declare that . . . the failure to act is contrary to law, and may direct the Commission to conform with such declaration." 52 U.S.C. § 30109(a)(8)(C).

24. If the FEC fails to conform to an order declaring its failure to act is contrary to law, FECA provides that "the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C).

## FACTUAL BACKGROUND

25. In June 2019, Defendant initiated a comprehensive "election-long effort" to support the reelection of U.S. Senator Joni Ernst.[3] That month, Defendant began to run paid advertising through Google and Facebook that directly named or featured images of Senator Ernst and promoted her as a "leader."[4] According to public records, every advertisement that Iowa Values sponsored on Google and Facebook in 2019 named or pictured Senator Ernst, and/or directly pertained to Defendant's efforts on her behalf.[5]

26. On June 27, 2019, Defendant publicly announced its launch of a "six-month voter education and data collection blitz" and "six-figure[]" digital advertising campaign targeting voters in Iowa, which it described as a "large-scale effort" that "is just the beginning of an election-long effort by Iowa Values to highlight the work of Sen. Joni Ernst."[6]

27. On June 28, 2019, Defendant began running paid advertising on Google's ad network that stated, "We Deserve Leaders Who Share Our Values Like Joni Ernst."[7] These advertisements ran on Google through July 27, 2019.[8] Subsequently, Defendant paid for additional

---

[3] Press Release, Iowa Values, Conservative Organization Begins Voter Outreach (June 27, 2019), https://mailchi.mp/7abf732cf9ed/releaseconservative-organization-begins-voter-outreach?e=%5bUNIQID.

[4] *See* Political Advertising by Iowa Values, Google Transparency Report, GOOGLE, https://transparencyreport.google.com/political-ads/advertiser/AR237965927210024960 (last visited Feb. 11, 2021); Ads by Our Iowa Values, Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?active_status=all&ad_type=political_and_issue_ads&country=US&impression_search_field=has_impressions_lifetime&view_all_page_id=785144711668660 (last visited Feb. 11, 2021).

[5] Political Advertising by Iowa Values, Google Transparency Report, *supra* note 4; Ads by Our Iowa Values, Facebook Ad Library, *supra* note 4.

[6] Press Release, Iowa Values, *supra* note 3.

[7] Political Advertising by Iowa Values, Google Transparency Report, *supra* note 4.

[8] *Id.*

ads on Google's network, which included video of Senator Ernst along with the message "Joni Ernst is fighting for us."[9] According to Google's Transparency Report, Defendant spent a total of $30,300 for fifteen advertisements on the platform in 2019, all of which named and featured images of Senator Ernst.[10]

28.     Also on June 28, 2019, Defendant began running a Facebook video advertisement that featured footage of Senator Ernst, with a voiceover stating, "We deserve leaders who have walked in our shoes and share these beliefs—like Joni Ernst. Standing up for Iowans all across our state and fighting for what we believe in."[11] According to public records made available by Facebook, this video advertisement cost Defendant between $3,000 and $3,500 and ran until July 27, 2019.[12] During this same time period, Defendant sponsored additional Facebook advertisements that featured images of Senator Ernst in an effort to recruit canvassers.[13]

29.     According to public information in Google's and Facebook's ad records, every advertisement that Defendant ran through those platforms in 2019 named or pictured Senator Ernst, or directly pertained to Defendant's efforts on her behalf.[14] There is little evidence of Defendant

---

[9]     Ad by Iowa Values (disseminated Aug. 2-Aug. 5, 2019), Google Transparency Report, GOOGLE, https://transparencyreport.google.com/political-ads/advertiser/AR237965927210024960/creative/CR216772840584642560; Ad by Iowa Values (disseminated Aug. 10-Sept. 2, 2019), Google Transparency Report, GOOGLE https://transparencyreport.google.com/political-ads/advertiser/AR237965927210024960/creative/CR427988543244075008.

[10]    *See* Political Advertising by Iowa Values, Google Transparency Report, *supra* note 4.

[11]    Ad by Our Iowa Values, *From caring for our neighbors to standing up for what's right, Joni shares our values* (disseminated June 28-July 27, 2019), Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?id=2786066358088466.

[12]    *Id.*

[13]    Ads by Our Iowa Values, Facebook Ad Library, *supra* note 4.

[14]    Each of the eleven ads sponsored by Iowa Values in 2019 available in the Google archive picture and name Joni Ernst, while all but one of Iowa Values's 2019 ads in Facebook's ad library either name or include images of Senator Ernst. *See* Political Advertising by Iowa Values, Google

making any public communications in 2019 other than those intended to benefit Senator Ernst in her reelection campaign.

30.     Defendant's 2019 digital ad campaign demonstrates that the organization had the "major purpose" of electing Senator Ernst no later than 2019. These digital advertisements were directed at Iowa's electorate, focused on Senator Ernst's character as a "leader," and lack any meaningful discussion of legislative issues. They are susceptible of no reasonable interpretation other than as electoral advocacy on behalf of Senator Ernst.[15] The ads' electoral purpose is even more apparent when considered along with Iowa Values's contemporaneous strategy memo describing the organization's plans to "communicate directly with specific segments of the electorate that will be determinant in winning or losing in 2020."[16]

31.     Defendant's spending on these advertisements was clearly intended to support Senator Ernst's campaign for the U.S. Senate, and exceeded $1,000.

32.     In July 2019, Claire Holloway Avella, the founder and president of Holloway Consulting and a fundraiser for Senator Ernst's campaign committee,[17] sent an email to a potential

---

Transparency Report, *supra* note 4; Ads by Our Iowa Values, Facebook Ad Library, *supra* note 4. The sole Facebook ad that does not directly reference Senator Ernst is linked to Iowa Values's press release from June 2019 announcing the campaign in support of Ernst. *See* Ad by Our Iowa Values, *Iowa Values Announces Digital Advertising Blitz and Door to Door Voter Canvassing* (disseminated July 9-July 19, 2019), Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?active_status=all&ad_type=political_and_issue_ads&country=US&impression_search_field=has_impressions_lifetime&view_all_page_id=785144711668660.

[15]    The Supreme Court has found that communications focused on a particular candidate's "character, qualifications, or fitness for office" can be indicative of an electoral purpose. *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 469-70 (2007).

[16]    Iowa Values, *Strategy Overview Iowa Values – 2019*, https://assets.documentcloud.org/documents/6550822/Holloway-Email-Attachment-Iowa-Values-Strategy.pdf, at 1.

[17]    *See* Holloway Consulting Inc., *Our Team*, http://www.hollowayconsulting.net/ourteam.html (last visited June 18, 2020); Joni for Iowa,

donor soliciting a $50,000 contribution "on behalf of Iowa Values."[18] The email included the subject line "Fundraising Request from Iowa Values 501(c)(4) - promoting issues Senator Joni Ernst advocates,"[19] and also attached a strategy memo by Defendant that described the organization's plans to target communications supportive of Senator Ernst to Iowa voters who "represent the 'firewall' between winning and losing in 2020 for Senator Ernst."[20]

33. This email further stated:

As a follow up to our introduction by Senator Ernst, I am reaching out to you on behalf of Iowa Values. By way of background, Iowa Values is 501(c)(4) [sic] formed to educate Iowans about common-sense solutions to various public policy issues of national, state, and local importance for which Senator Ernst advocates.

. . .

Attached please find a memo outlining our 2019 strategy. It is our hope that [redacted] will consider an investment of $50,000 to help continue our efforts over the summer months. I have attached a contribution form with wiring instructions for your convenience. As a reminder, contributions to 501(c)(4) entities are not publically [sic] disclosed.[21]

---

Disbursements to Holloway Consulting, 2019-2020, FEC.GOV, https://www.fec.gov/data/disbursements/?data_type=processed&committee_id=C00546788&recipient_name=holloway&two_year_transaction_period=2020 (last visited Feb. 11, 2021) (showing $278,770 in disbursements from Ernst's campaign committee to Holloway Avella's consulting firm); Ernst Victory, *You Are Cordially Invited to a Breakfast in Support of Senator Joni Ernst*, http://cdn.idonatepro.com/clientphotos/client3/library/06.19.18_Ernst_Breakfast_Invite.pdf (invitation to a June 19, 2018 fundraiser for Senator Ernst's joint fundraising committee with Claire Holloway Avella listed as the contact).

In addition to its connection to Ms. Holloway Avella, Iowa Values was co-founded, in 2017, by Jon Kohan, who now works as a consultant for Ernst's campaign after leaving Iowa Values last year. Brian Slodysko, *'Dark Money' ties raise questions for GOP Sen. Ernst of Iowa*, ASSOCIATED PRESS (Dec. 6, 2019), https://apnews.com/eeb44fc06b0cb202bc1edbd1adee7f7d.

[18]  Email from Claire Holloway Avella to [redacted] (July 2019), http://www.documentcloud.org/documents/6570893-July-2019-Email-From-Fundraiser.html.

[19]  *Id.*

[20]  Iowa Values, *Strategy Overview Iowa Values – 2019*, *supra* note 16.

[21]  Email from Claire Holloway Avella to [redacted] (July 2019), *supra* note 18.

34. The Iowa Values strategy memo included with Ms. Holloway Avella's fundraising email began by announcing, "The 2020 Election Cycle is upon us and Iowa Values is approaching 2020 with an effort to be data driven and people focused."[22] It continued:

> At this point in the election cycle we don't need to communicate with all voters. We do however need to identify and communicate directly with specific segments of the electorate that will be determinant in winning or losing in 2020. Our focus, particularly in 2019, will be to determine what those voters care most about and to communicate with them directly.[23]

35. The strategy memo described suburban, college-educated women as "voters that lean Republican on the issues but lean away from the GOP at times on the tone of the GOP. We call these voters 'disengagers.' They are an irreplaceable part of a winning coalition and represent the 'firewall' between winning and losing in 2020 for Senator Ernst."[24] Iowa Values further claimed in the memo that it had "identified 126,407 'Disengagers' in Iowa," and that:

> The basis of our mission is to shore up those voters through sustained direct communications. We believe it is critical to start this messaging now in order to provide these voters with the information they will need to be able to fend off the disinformation attacks that will come in 2020.[25]

36. The strategy memo concluded, "We believe that there is critical work with segments of the electorate that must begin now in 2019 so that Senator Ernst has the best possible jumping off point in 2020."[26]

37. The content of the strategy memo provides further evidence that by the summer of 2019 Defendant's "major purpose" was reelecting Senator Ernst—and that the organization

---

[22] Iowa Values, *Strategy Overview Iowa Values – 2019*, *supra* note 16, at 1.

[23] *Id.*

[24] *Id.* at 2.

[25] *Id.*

[26] *Id.* at 4.

admitted to having such purpose when communicating with prospective donors.[27] For instance, the memo informed potential donors that "[t]he basis of [Iowa Values's] mission is to shore up those *voters*"—specifically, college-educated women in the suburbs—who "are an irreplaceable part of a *winning coalition* and represent the 'firewall' between *winning and losing in 2020* for Senator Ernst."[28] Likewise, the strategy memo described Defendant's "focus, particularly in 2019," as "identify[ing] and communicat[ing] directly with specific segments of *the electorate* that will be determinant in *winning or losing in 2020*."[29]

38. Moreover, Ms. Holloway Avella attached the strategy memo to an email soliciting $50,000 "on behalf of Iowa Values" in order "to help continue our efforts over the summer months."[30] Thus, Defendant's "six-figure[]" digital ad campaign and voter outreach "blitz"[31] were funded, at least in part, by "contributions"—i.e., money or other things of value solicited for the purpose of influencing a federal election, 52 U.S.C. § 30101(8)(A)(i)—which likely exceeded a total of $1,000 in the aggregate.

39. Defendant qualified as a federal political committee by the summer of 2019. Defendant's fundraising and digital advertisements demonstrate that Defendant received "contributions" in excess of $1,000 and made "expenditures" of more than $1,000 in 2019. In addition, Defendant's public statements, digital advertisements, strategy memo, and fundraising appeals all demonstrate that its "major purpose" by the summer of 2019 was supporting the

---

[27] *See* Iowa Values, *Strategy Overview Iowa Values – 2019*, *supra* note 16 and accompanying text.

[28] *Id.* at 2 (emphasis added).

[29] *Id.* at 1 (emphasis added).

[30] Email from Claire Holloway Avella, *supra* note 18.

[31] Press Release, Iowa Values, *supra* note 3.

reelection of Senator Ernst. Defendant therefore violated FECA, 52 U.S.C. §§ 30102-30104, by failing to organize, register, and report as a political committee.

40. Although Defendant's activities show that it became a political committee by June 2019, its spending during the months before the 2020 election—between $156,900 and $170,398 on Facebook and Google ads supporting Senator Ernst[32]—confirms that Defendant's consistent major purpose was its "election long effort" to support the reelection of Senator Ernst in the 2020 election.

    a. After a lull in its paid advertising on Google's ad network from September 2019 to July 2020, Defendant again began running ads through the platform that supported Senator Ernst or both supported Ernst and attacked Theresa Greenfield, her opponent in Iowa's senate race.[33] These advertisements ran from mid-September 2020 through Election Day on November 3, 2020.[34] According to Google's Transparency Report, Iowa Values spent a total of $90,500 for five advertisements on the platform in the run-up to the 2020 election, all of which named and supported Senator Ernst and one of which also attacked Ms. Greenfield.[35]

    b. Defendant also ran a variety of text and video Facebook ads between February 2020 and October 2020, which featured Senator Ernst and included statements such as "Senator Joni Ernst is working hard to provide relief for Iowa families and small businesses," and "Joni Ernst has consistently stood up for our Iowa Values during these

---

[32] *See* Political Advertising by Iowa Values, Google Transparency Report, *supra* note 4; Ads by Our Iowa Values, Facebook Ad Library, *supra* note 4.

[33] Political Advertising by Iowa Values, Google Transparency Report, *supra* note 4.

[34] *Id.*

[35] *See* Political Advertising by Iowa Values, Google Transparency Report, *supra* note 4.

15

uncertain times." [36] According to public records made available by Facebook, Defendant spent between $66,400 and $79,798 for ads supportive of Senator Ernst during the nine months before the 2020 election.[37] Facebook's Ad Library shows that all but one Facebook advertisement purchased by Iowa Values in 2020 supported Senator Ernst and featured video or images of her likeness.[38]

41.    Defendant's spending on these advertisements was clearly intended to support Senator Ernst's reelection, and exceeded $1,000.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES & PROCEDURAL HISTORY**

42.    On December 19, 2019, CLC filed an administrative complaint with the FEC, alleging that Iowa Values had violated 52 U.S.C. §§ 30102-30104 by failing to register as a federal political committee and file reports of its contribution and expenditure activity, as required by FECA.

43.    On December 27, 2019, the FEC sent CLC a letter acknowledging the receipt of the administrative complaint and designating it Matter Under Review No. 7674. Despite the substantial evidence in CLC's administrative complaint demonstrating that Iowa Values violated FECA, there is no indication that the FEC has taken any action on the matter.

44.    On June 30, 2020, more than 190 days after filing the administrative complaint, CLC filed a civil action against the FEC in the U.S. District Court for the District of Columbia under 52 U.S.C. § 30109(a)(8)(A), which provides Plaintiff a cause of action for "a failure of the

---

[36]    Ads by Our Iowa Values, Facebook Ad Library, *supra* note 4.

[37]    *Id*.

[38]    *Id.*

16

Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed."

45. On October 14, 2020, after the FEC had failed to timely appear or otherwise respond to CLC's lawsuit, the district court issued an order granting default judgement to CLC against the Commission. Order, *Campaign Legal Center v. FEC*, No. 20-1778 (D.D.C. Oct. 14, 2020). In the order, the court found that the FEC's failure to act on CLC's administrative complaint was "contrary to law," and it ordered the FEC to "conform to this Court's Order within ninety days [i.e., by January 12, 2021] by acting on the plaintiff's administrative complaint." *Id.*

46. On January 27, 2021, after the FEC had failed to appear in the litigation or otherwise advise the Court or CLC that it had acted on CLC's administrative complaint, CLC filed a motion for an order declaring that the FEC had failed to conform to the default judgement order.

47. On February 11, 2021, the Court issued an Order declaring the FEC had failed to conform to its Order from October 14, 2020, and ordering that, "[p]ursuant to 52 U.S.C. § 30109(a)(8)(C), Plaintiff Campaign Legal Center may bring 'a civil action to remedy the violation involved in the original complaint'" against Iowa Values. Order, *Campaign Legal Center v. FEC*, No. 20-1778 (D.D.C. Feb. 11, 2021).

## CAUSES OF ACTION

### I. Failure to Organize and Register as a Political Committee

48. Plaintiff repeats and realleges paragraphs 1-47.

49. No later than June 2019, Defendant operated as a political committee dedicated to supporting the reelection of Senator Joni Ernst. It "receive[d] contributions aggregating in excess of $1,000 during a calendar year or . . . ma[de] expenditures aggregating in excess of $1,000 during a calendar year," 52 U.S.C. § 30101(4)(A), and its public statements, digital advertisements,

17

strategy memo, and fundraising appeals demonstrate that it had the "major purpose" of reelecting Senator Ernst, *Buckley*, 424 U.S. at 79.

50. FECA and FEC regulations require federal political committees to register with the FEC within 10 days of qualifying as a political committee. 52 U.S.C. § 30103(a); 11 C.F.R. § 102.1(d).

51. Defendant has never registered with the FEC as a political committee, nor has it ever filed a request with the FEC to terminate its status as a political committee.

52. By failing to organize and register as a political committee, Defendant violated FECA and FEC regulations. *See* 52 U.S.C. §§ 30102, 30103; 11 C.F.R. § 102.1(d), 102.7.

53. Defendant's failure to organize and register as a political committee, as required by FECA and FEC regulations, has harmed and continues to harm Plaintiff by depriving CLC of the information to which it is entitled, and which CLC uses to carry out its organizational mission, including assisting voters in evaluating candidates for public office.

## II.    Failure to File Required Reports

54. Plaintiff repeats and realleges paragraphs 1-53.

55. As a federal political committee, Defendant was required to file periodic disclosure reports with the FEC identifying, among other information: the identity of each person who contributed more than $200 in a year to the organization and the amount each person contributed; each political committee that made a contribution to Defendant and the amount each committee contributed; Defendant's outstanding debts and obligations; and all of its disbursements. 52 U.S.C. § 30104(a)(4), (b); *see also* 11 C.F.R. §§ 104.1, 104.3-104.5, 104.8, 104.9, 104.11-104.13.

56. To date, Defendant has failed to file any reports with the FEC disclosing the information required by FECA and FEC regulations.

57. By failing to file these reports and disclose the required information about its campaign activities, Defendant violated 52 U.S.C. § 30104 and 11 C.F.R. §§ 104.1, 104.3-104.5, 104.8, 104.9, 104.11-104.13.

58. By failing to file these reports and disclose the information required by FECA and Commission regulations, Defendant has harmed and continues to harm CLC by depriving it of information to which it is statutorily entitled, and which CLC uses to carry out its organizational mission, including assisting voters in evaluating candidates for public office.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that Defendant Iowa Values became a federal political committee no later than June 2019;

(2) Order Defendant to register as a political committee with the FEC by filing the appropriate documentation;

(3) Order Defendant to provide Plaintiff with the information to which it is legally entitled under FECA and FEC regulations, including the identification of all sources of contributions that must be disclosed under the Act;

(4) Order Defendant to file corrective reports with the FEC for each periodic report that Defendant was required, but failed, to file;

(5) Order Defendant to continue to file periodic reports as a political committee until such time that the organization lawfully terminates its political committee status with the FEC;

(6) Assess an appropriate civil penalty against Defendant in accordance with 11 C.F.R. § 111.24, to be paid to the United States, for each violation Defendant is found to have committed;

(7) Award Plaintiff its costs and reasonable attorneys' fees in this action; and

(8) Grant such other relief the Court may deem just and proper.

February 12, 2021                                       Respectfully submitted,

/s/ Richard A. Graham
Richard A. Graham (DC Bar No. 1500194)
Molly E. Danahy (DC Bar No. 1643411)
Erin Chlopak (DC Bar No. 496370)
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Ste. 400
Washington, DC 20005
(410) 829-8996
agraham@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org
echlopak@campaignlegalcenter.org