## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAMPAIGN LEGAL CENTER,** | |
| *Plaintiff,* | |
| **v.** | **Case No. 21-cv-389-RCL** |
| **IOWA VALUES,** | |
| *Defendant.* | |

## MEMORANDUM OPINION

The Federal Election Commission ("FEC") performs crucial work to preserve the integrity of our electoral system. Among other things, it works to "minimize[] the potential for abuse of the campaign finance system" by requiring disclosure to "arm[] the voting public with information." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 223–24 (2014). But Congress foresaw the possibility that the FEC could abdicate its responsibilities to serve as an electoral watchdog. Refusing to abandon its citizens to one agency's whims, Congress carefully constructed the Federal Election Campaign Act ("FECA") to provide for citizen suits, where an aggrieved party can directly sue a potential FECA violator in federal court.

This is one of those citizen suits. Plaintiff Campaign Legal Center sued defendant Iowa Values, alleging that defendant has unlawfully concealed its election activities. Defendant moved to dismiss, arguing that the Court lacks subject matter jurisdiction and that plaintiff failed to state a claim. ECF No. 13. In the alternate, defendant moved to strike certain portions of the complaint. *Id.* Plaintiff opposed defendant's motion. ECF No. 19. Upon consideration of the record, the parties' briefs, and defendant's reply, ECF No. 20, the Court will **DENY** defendant's motion to dismiss and to strike.

## I. BACKGROUND

### A. Factual History

Plaintiff alleges that in the summer of 2019, defendant launched "a comprehensive campaign to support the reelection of U.S. Senator Joni Ernst." ECF No. 1 at 1. Through this campaign, defendant expended over $30,000 on digital advertisements for Ernst on Facebook and Google. *Id.* ¶ 28–29. These advertisements featured pictures of Ernst campaigning and focused on Ernst's characteristics as a "leader." *Id.* ¶ 30. Iowa voters were targeted with messages declaring that "Joni Ernst is fighting for us" and "We Deserve Leaders Who Share Our Values Like Joni Ernst." *Id.* ¶ 27. Other advertisements recruited canvassers and featured Ernst smiling broadly at a crowd or posing in front of a bus. *Id.* ¶ 28.

That same summer, Claire Holloway Avella, a registered fundraiser for Ernst's campaign, sent an email to a potential donor requesting $50,000 "on behalf of Iowa Values." *Id.* ¶ 32. The email, which attached a strategy memorandum, noted that the organization planned to "target communications supportive of Senator Ernst to Iowa voters." *Id.* Plaintiff alleges defendant received donations in response to this solicitation email, which it used in part to fund its campaign "blitz." *Id.* ¶ 35.

Because defendant is not an organization registered as a federal political committee, plaintiff argues that these actions are in violation of FECA. *Id.* at 1. Political committees that receive contributions or make expenditures of over $1,000 annually are required to register with the FEC and "file periodic reports disclosing [their] contributions, expenditures, and debts." *Id*; *see* 52 U.S.C. §§ 30102–04. Plaintiff alleges that by flouting these rules while accepting contributions and running campaign advertisements for Joni Ernst, defendant broke the law.

**B. Procedural History**

Armed with allegations, plaintiff filed an administrative complaint with the FEC on December 19, 2019, pursuant to 52 U.S.C. § 30109(a)(1). ECF No. 1 ¶ 4. The administrative complaint alleged that defendant failed to register as a political committee and report as required. ECF No. 1 ¶ 4. And then, plaintiff waited. But the FEC did not take any action on the complaint— in fact, the FEC never gave any indication it has acted on the matter. *Id.*

If the FEC either dismisses an administrative complaint or fails to act on the complaint in the 120-day period after it is filed, the party who filed the complaint may file a petition in this district. 52 U.S.C. § 30109(a)(8)(A). Then, if a court finds that the FEC's action or inaction was "contrary to law," it may "direct the [FEC] to conform with some declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C). Notably, if the FEC determines in its prosecutorial discretion to decline enforcement and dismiss a complaint, that action cannot be held contrary to law. *Citizens for Resp. & Ethics in Washington ("CREW") v. Fed. Election Comm'n*, 892 F.3d 434, 441 (D.C. Cir. 2018).

Accordingly, on June 30, 2020, 194 days after plaintiff filed its complaint with the FEC without a response or a dismissal, it brought a civil action against the FEC in this Court. ECF No. 1 ¶ 5. There, too, the FEC failed to respond or enter an appearance, and so on October 14, 2020, this Court granted plaintiff's motion for default judgment against the FEC. Order, ECF No. 14, *Campaign Legal Center v. Fed. Election Comm'n*, No. 20-cv-1778 (RCL) (D.D.C. Oct. 14, 2020). The Court found that the FEC's failure to act on the administrative complaint was "contrary to law" and ordered the FEC to act upon plaintiff's complaint within 90 days. *Id.* But 90 days came and went, and the FEC took no further action. On February 11, 2021, this Court found that the

3

FEC failed to conform to its Order and held that the plaintiff could proceed with a civil action directly against defendant. Order, ECF No. 24, *Campaign Legal Center v. Fed. Election Comm'n*, No. 20-cv-1778 (RCL) (Feb. 11, 2021).

The next day, plaintiff filed this action against defendant Iowa Values. ECF No. 1. Defendant moved to dismiss for lack of jurisdiction, for failure to state a claim, and, in the alternate, to strike a portion of the complaint. ECF No. 13. This motion is now ripe.

## II. LEGAL STANDARDS

### A. Standing

To maintain any claim in federal court, a plaintiff must show that it suffers an "injury in fact" that is "fairly traceable" to defendant's challenged actions and that the injury would be "redressed" by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The injury must be particularized—in other words, the injury must "affect the plaintiff in a personal and individual way." *Id*. at 560 n.1. If, in contrast, the plaintiff only alleges a "generalized grievance" such as "a common concern for the obedience to law," the plaintiff has no standing. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 23 (1998).

### B. Motion To Dismiss For Lack Of Subject Matter Jurisdiction

Before a court may "proceed at all in any cause" it must ensure that it possesses subject matter jurisdiction over a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). While a court "must accept the factual allegations in the complaint as true" when considering whether there is subject matter jurisdiction, *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003), the plaintiff bears the burden to establish jurisdiction. *Lujan*, 504 U.S. at 561. "For this reason, 'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny

in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (alterations in original). And the Court is not limited to the pleadings—it may consider "such materials outside the pleadings as it deems appropriate" to determine whether it has jurisdiction. *Scolaro v. District of Columbia Bd. of Election & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

## C. Motion To Dismiss For Failure To State A Claim

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6). Put another way, the factual content included in the complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating the complaint, a court must accept as true all allegations within the complaint and "construe[] reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. Dep't Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). Here, again, a court is not limited to just the facts in the complaint—it can also consider "'documents attached as exhibits or incorporated by reference in the complaint' or 'documents upon which the plaintiff's complaint necessarily relies even if the parties do not produce the document.'" *Tefera v. OneWest Bank, FSB*, 19 F. Supp. 3d 215, 220 (D.D.C. 2014) (quoting *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C. 2013)) (cleaned up).

## D. Motion To Strike

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But motions to strike are particularly "disfavored" by the federal courts. *Wiggins v. Philip Morris, Inc.*, 853 F.

Supp. 457, 457 (D.D.C. 1994). Only if the allegations in a complaint are both irrelevant and prejudicial to defendant will a motion to strike be granted. *Id.*

### III. DISCUSSION

#### A. This Court Has Subject Matter Jurisdiction Under 52 U.S.C. § 30109(a)(8)(C) Because The FEC's Inaction On Plaintiff's Administrative Complaint Was Contrary To Law

This Court has federal question jurisdiction based on 52 U.S.C. § 30109(a)(8)(C), which provides for citizen suits by private complainants against potential FECA violators in limited circumstances. Complainants must clear multiple procedural hurdles before maintaining such a suit. The complainant must file (1) a complaint with the FEC, (2) wait for the complaint's dismissal or 120 days of inaction, (3) file a petition in the United States District Court for the District of Columbia, (4) convince the court to find that the FEC's dismissal or failure to act was contrary to law, and (5) give the FEC at least 30 days to conform with the court's decision. 52 U.S.C. § 30109(a)(8). Only then can a court have jurisdiction over a suit filed by a private complainant against a potential violator. Plaintiff has overcome each of these hurdles. This Court, in a related case, found that the FEC's failure to act was contrary to law, Order, ECF No. 14, *Campaign Legal Center v. F.E.C.*, 1:20-cv-1778 (RCL) (Oct. 14, 2020), and that FEC failed to conform with this Court's decision, Order, ECF No. 24, *Campaign Legal Center*, 1:20-cv-1778 (RCL) (Feb. 11, 2021).

Despite plaintiff's completion of these procedural prerequisites, defendant argues that this Court lacks subject matter jurisdiction because the FEC's failure to act on plaintiff's complaint was not "contrary to law" and because the FEC did not fail to conform with this Court's order. ECF No. 13-1 at 11. In other words, defendant seeks to relitigate the merits of this Court's decisions in *Campaign Legal Center v. Federal Election Commission*, 1:20-cv-1778 (RCL). Defendant puts forth no intervening precedential case law to support its notion that this Court's

decisions were wrong. However, because a court "cannot proceed at all" without subject matter jurisdiction, *Steel Co.*, 523 U.S. at 94, the Court will address defendant's argument that the necessary prerequisites for federal question jurisdiction have not been met.

When evaluating whether the FEC's inaction on a complaint is "contrary to law," the Court must determine whether the FEC acted "expeditiously" considering factors such as "the credibility of the allegation, the nature of the threat posed, the resources available to the agency, and the information available to it, as well as the novelty of the issues involved." *Common Cause v. Fed. Election Comm'n*, 489 F. Supp. 738, 744 (D.D.C. 1980). The Circuit has also instructed courts to consider six other factors regarding unreasonable delay:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Telecommunications Research and Action Center ("TRAC") v. Fed. Commc'n Comm'n*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations omitted); *see Giffords v. Fed. Election Comm'n*, 19-CV-1192 (EGS), 2021 WL 4805478, at *3 (D.D.C. Oct. 14, 2021) (applying the *Common Cause* and *TRAC* factors in a suit against the FEC alleging its inaction was contrary to law). Together, these nonexhaustive factors inform a court's decision.

Turning first to the *Common Cause* factors, the FEC has failed to act on a supported, credible complaint that alleges a violation of federal election law and, ultimately, a threat to the integrity of the electoral system. Both parties in this case acknowledge that the complaint is

"routine" and hardly raises a novel issue that would demand a substantial amount of the agency's resources. ECF No. 19 at 11; ECF No. 13-1 at 16. And because "[m]uch of the information in the complaint could be verified by the FEC's own records," *Citizens for Percy '84 v. Fed. Election Comm'n*, No. 84-CV-2653 (JHP), 1984 WL 6601, at *4 (D.D.C. Nov. 19, 1984), the FEC's delay cannot be excused for lack of information. So the *Common Cause* factors support finding that the FEC's actions were contrary to law.

The *TRAC* factors also support finding the FEC's inaction and delay contrary to law. The first two factors state that the agency's timeline must be governed by the rule of reason and that a statutory indication by Congress of a timetable may inform that rule of reason. *TRAC*, 750 F.2d at 80. Here, Congress provided a "timetable" to inform the rule of reason: when the FEC fails to "act on such complaint during the 120-day period beginning on the date the complaint is filed," citizens are allowed to challenge that delay in federal court. 52 U.S.C. § 30109(a)(8)(A). The 120-day timeline is a jurisdictional floor to filing suit and is not dispositive. *Citizens for Percy '84*, 1984 WL 6601, at *4. However, when considering the TRAC factors, this time frame informs the rule of reason. Here, the FEC has failed to take action on plaintiff's complaint far beyond the 120 days in the statute with no explanation. These two factors support a finding that the FEC's inaction was contrary to law.

Turning next to factors three and five, the prejudicial effect and tolerability of the delay, multiple courts in this district have recognized the "threats to the health of our electoral processes also require timely attention." *Giffords*, 2021 WL 4805478, at *6 (internal citations omitted). Here, if plaintiff's allegations are right, the FEC's inaction has prejudiced the plaintiff by failing to enforce laws to compel the disclosure of information plaintiff is statutorily entitled to. And the

FEC's inaction has further harmed the electoral system generally by allowing defendant to violate FECA with impunity.

Evaluating the fourth *TRAC* factor, there is no evidence that expediting the FEC's action here would have affected other cases of competing priority or that its inaction indicates a careful determination of prosecutorial priorities. ECF No. 19 at 11. Defendant argues that because the FEC lacked its quorum for a portion of the time that plaintiff's complaint was pending (and thus could not legally take any action), this factor and the "rule of reason" requirement support against finding unreasonable delay. ECF No. 13-1 at 15. As defendant explains it, because there was a limited amount of time the FEC had a quorum, it necessarily prioritized activities of higher importance when it *did* have a quorum, and it was not reasonable to expect the FEC to act on plaintiff's complaint. *Id.*

But defendant does not dispute that the FEC *had* a quorum during the pendency of plaintiff's complaint—it was "statutorily capable of acting on the complaint" from May 19, 2020 to July 3, 2020. Order at 1, ECF No. 14, *Campaign Legal Center*, 21-CV-389 (D.D.C. Oct. 14, 2020). And this Court was aware of the FEC's quorum status when it entered default judgment finding the FEC's inaction was "contrary to law." *See id.* at 1 n.1 (discussing FEC's lack of a quorum). Given that the FEC had a quorum during the pendency of plaintiff's complaint, it is unclear how the fact that there *were* periods where the FEC could not act changes the Court's analysis. And "[w]hatever deference an agency is due in resource allocation decisions, it is entitled to substantially less deference when it fails to take any meaningful action within a reasonable time period." *Giffords*, 2021 WL 4805478, at *7 (quoting *Democratic Senatorial Campaign Comm. v. Fed. Election Comm'n,* 95-CV-0349 (JHG), 1996 WL 34301203, at *5 (D.D.C. Apr. 17, 1996)) (alteration in original). Like other courts in this district, this Court will not excuse the FEC's

inaction just because there were periods where it lacked a quorum. *Giffords*, 2021 WL 4805478, at *7.

Defendant finally argues that dismissing plaintiff's claim to allow for more time for the FEC to consider the complaint "does no harm to the plaintiff." ECF No. 13-1 at 17. This argument has no bearing on subject matter jurisdiction. A court has subject matter jurisdiction, or it does not. Whether plaintiff would be harmed by dismissal does not alter this court's Rule 12(b)(1) analysis.

Again, as it did previously, this Court finds that the *TRAC* and *Common Cause* factors support finding that the FEC acted contrary to law. Because the FEC failed to conform its conduct after the Court made its finding, plaintiff rightfully filed this citizen suit. The Court has subject matter jurisdiction under 52 U.S.C. § 30109(a)(8).

**B.  Plaintiff Has Standing Because It Has Suffered An Informational Injury**

Defendant next argues that the case should be dismissed for lack of standing. Though it acknowledges that this Court determined that plaintiff had standing to bring an action against the FEC, defendant argues that plaintiff somehow loses its standing when it brings a suit against a private party. ECF No. 13-1 at 26. In support of this argument, defendant claims that there are no "damages available" to plaintiff and seems to contest whether plaintiff suffered an injury in fact. *Id.* at 27. This argument is inapposite.

A plaintiff suffers an "'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Akins*, 524 U.S. at 21 (citing *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). Plaintiff here has failed to obtain information which it alleges defendant is required to publicly disclose under FECA. Defendant, if the allegations are true, disregarded FECA and did not properly register or publicly disclose the required information. So plaintiff here has suffered an injury. And if defendant intended for its argument about "damages

10

available" to encompass redressability, plaintiff's alleged injury is clearly redressable by this Court—52 U.S.C. § 30109(a)(8)(C) allows the court to "remedy" the violation in plaintiff's original complaint to the FEC, and those potential remedies include "permanent or temporary injunction[s]" to correct or prevent a violation of FECA. *Id.* at (a)(6)(A).

Defendant argues if plaintiff "has standing to sue Iowa Values directly [it] would mean that anyone who wants information from Iowa Values . . . could file an FEC complaint and prosecute the case directly in the event of FEC inaction." ECF No. 13-1 at 27. But the mere fact that the asserted injury is one which is "shared in substantially equal measure by all or a large class of citizens" does not mean the harm cannot be particularized to one plaintiff. *Akins*, 524 U.S. at 23. Plaintiff is not merely suing to force defendant to follow the law because of a general interest in the "common concern for obedience to law." *Id.* at 23. Instead, plaintiff is allegedly uniquely injured by a lack of information it is legally entitled to and by defendant's allegedly unlawful withholding of that information.

Accordingly, the Court sees no reason to depart from the Supreme Court's conclusion that "the informational injury at issue here, directly related to voting, the most basic of political rights, is sufficiently concrete and specific such that the fact that it is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts." *Id.* at 24–25. Defendant's identity does not alter this analysis. Plaintiff has Article III standing.

## C. 52 U.S.C. § 30109(a)(8)(C) Is Constitutional

Defendant raises both facial and as-applied constitutional challenges to FECA's nearly half-century old citizen suit statute, arguing that § 30109(a)(8)(C) is void for vagueness, violates the Take Care Clause, and violates the First Amendment. ECF No. 13-1 at 18. A facial challenge can succeed only if a defendant can "establish that no set of circumstances exist under which the

Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). There is a special type of facial challenge in the First Amendment context, however, where a law may be invalidated as overbroad if a "substantial number of its application are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 n.6 (2008). Defendant did not attempt either. Accordingly, this Court will only evaluate defendant's First Amendment challenge as applied.

    *i. 52 U.S.C. § 30109(a)(8)(C) Is Not Void For Vagueness*

    This Court agrees with plaintiff that defendant's void-for-vagueness argument "misapplies vagueness doctrine." ECF No. 19 at 17. A law is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). The law must "give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke*, 423 U.S. 48, 50 (1975).

    Defendant does not argue that 52 U.S.C. § 30109(a)(8)(C) does not sufficiently warn people how to conduct themselves under FECA. Instead, it appears to argue that § 30109(a)(8)(C) does not sufficiently explain the exact *procedure* that the district court must follow. ECF No. 13-1 at 20. But the Federal Rules of Evidence and Procedure provide the answers to the questions defendant asks. Indeed, defendant identifies no instance where courts have ever held a statute void for vagueness because the procedure was not clearly delineated. Accordingly, § 30109(a)(8)(C) is not void for vagueness.

    *ii. 52 U.S.C. § 30109(a)(8)(C) Does Not Violate The Take Care Clause*

    Defendant also argues that § 30109(a)(8)(C) is unconstitutional because it violates the Take Care Clause. ECF No. 13-1 at 20. The Take Care Clause requires the President to "take Care that

the Laws be faithfully executed." U.S. Const. art. 2 § 3. The Supreme Court has held that though the Take Care Clause means that the "executive power" belongs to the President alone, lesser officers must assist the President in discharging his duties. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 104 S. Ct. 2183, 2197 (2020). Only these lesser "Officers of the United States," however, may vindicate public rights in the courts. *Buckley v. Valeo*, 424 U.S. 1, 140 (1976).

Defendant argues that a statute which allows a plaintiff to vindicate public rights violates the Take Care Clause. But as explained above in Part III.B, plaintiff is not vindicating a public right in the courts. Instead, plaintiff is vindicating its own unique and particularized informational injury. Section 30109(a)(8)(C) accordingly does not violate the Take Care Clause.

Another court in this district has considered a similar argument before. *Citizens for Resp. and Ethics in Washington ("CREW") v. Am. Action Network*, 410 F. Supp. 3d 1 (D.D.C.), *motion to certify appeal denied*, 415 F. Supp. 3d 143 (D.D.C. 2019). In *CREW*, the court found that § 30109(a)(8)(C) citizen suits do not violate the Take Care Clause for a different reason: because these suits do not implicate the Executive Branch's prosecutorial discretion. *Id.* at 26. If the FEC determines in its prosecutorial discretion to decline enforcement and dismiss a complaint, that action cannot be held contrary to law and cannot trigger § 30109(a)(8)(C*). CREW*, 892 F.3d at 441. So § 30109(a)(8)(C) cannot violate the Take Care Clause by infringing upon prosecutorial discretion either.

### iii. *52 U.S.C. § 30109(a)(8)(C) Does Not Violate The First Amendment Right To Freely Associate*

Finally, defendant argues that § 30109(a)(8)(c) violates its First Amendment rights by providing complainants with an "unprecedented opportunity to learn immense amounts of information about people's constitutionally protected private associational interests." ECF No. 13-1 at 24. In particular, it alleges that plaintiffs may be able to obtain information via discovery that

invades defendant's private associational interests in violation of the standards set forth in

*N.A.A.C.P v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958).

Defendant vaguely gestures towards *N.A.A.C.P.* to support its argument that § 30109(a)(8)(C) unconstitutionally encroaches on private associational rights. But defendant fails to ground its argument regarding constitutionality in any case law or precedent. Instead, defendant does little more than describe the FEC's procedure to evaluate complaints, noting that it "may be a long and cumbersome process, but it is the process that Congress created—and the Supreme Court has approved." ECF No. 13-1 at 24. Defendant fails to reckon with the fact that the § 30109(a)(8)(C) citizen suit is a *part* of the "long and cumbersome process" Congress created. A citizen suit is not a bypass of the process. These § 30109(a)(8)(C) suits may only be initiated after an equally burdensome undertaking—an initiation of a complaint with the FEC, a set waiting period, a suit against the FEC, a court's finding that the FEC acted "contrary to law," another waiting period for the FEC to conform, and a court's finding that the FEC failed to conform with its order. *See* 52 U.S.C. § 30109(a)(8)(C). And even once the citizen suit may be maintained against the alleged violator, a complainant cannot maintain a frivolous suit, because Rule 12(b)(6) guards against unwarranted invasions of private associational interests. Fed. R. Civ. P. 12(b)(6). It is inaccurate to characterize a citizen suit as an evasion of proper process for the purpose of a fishing expedition.

Defendant's private associational rights are important and defendant is right that these rights cannot be needlessly invaded. That is why a citizen suit can only be initiated *after* the FEC acts contrary to law and *after* it fails to subsequently conform to a court's order. While defendant paints the FEC's regulatory breakdown as the unforeseeable and unintended result of FECA's citizen suit provision, ECF No. 13-1 at 24–25, it would be more accurate to say that the citizen suit

14

provision was created in anticipation of FEC's regulatory breakdown or inaction. If there was no citizen suit provision, the FEC's inaction would hinder public access to information necessary to "make informed choices in the political marketplace" and would allow organizations to run election-related advertisements "while hiding behind dubious and misleading names." *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 367 (2010) (internal quotation marks omitted). Congress foresaw potential issues with the FEC's process and added a safeguard to protect the First Amendment rights of complainants.

**D. Plaintiff Adequately Stated A Claim For Which Relief Can Be Granted**

Defendant next argues that plaintiff's complaint should be dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). To survive this motion to dismiss, plaintiff must have pleaded enough facts for its complaint to be "plausible on its face." *Ashcroft,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). A court assumes "the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor" in resolving a motion under Rule 12(b)(6). *Sissel,* 760 F.3d at 4. And construing all reasonable inferences in plaintiff's favor, plaintiff has succeeded in stating a claim plausible on its face.

Plaintiff alleges that defendant is a political committee but has failed to register accordingly or complete statutorily required disclosure. ECF No. 1 at 1. There are two requirements for an entity to be classified as a political committee. *Citizens for Resp. & Ethics in Washington ("CREW") v. Fed. Election Comm'n,* 209 F. Supp. 3d 77, 82 (D.D.C. 2016). The first requirement is statutory. A political committee is a group which "receives contributions aggregating in excess of $1,000 during a calendar year *or* which makes expenditures aggregating in excess of $1,000 during a calendar year." 52 U.S.C. § 30101(4)(A). The second requirement comes from the Supreme Court. A political committee must be an organization either "under the control of a

candidate or *the major purpose of which is the nomination or election of a candidate.*" *Buckley*, 424 U.S. at 79 (emphasis added).

      i.   *Plaintiff Pleaded Sufficient Facts To Establish A Plausible Claim That Defendant Received Contributions In Excess Of $1,000 During A Calendar Year*

FECA defines a contribution as "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for [f]ederal office." 52 U.S.C. § 30101(8)(a)(i). Plaintiff sufficiently states a claim that defendant received at least $1,000 in contributions during 2019.[1]

Plaintiff's complaint describes a comprehensive "election-long effort" that defendant undertook to "support the reelection of Senator Joni Ernst." ECF No. 1 ¶ 25. Defendant announced a six-month advertising "blitz," starting late June 2019 to "highlight" Ernst's work. *Id.* ¶ 26. In the latter half of 2019, defendant spent at least $30,300 on advertisements on Google and at least $3,000 on advertisements on Facebook to further this blitz. ECF No. 1 ¶ 27–28. And in July 2019, towards the beginning of this campaign, Avella, a fundraiser for the Ernst campaign, solicited a $50,000 donation via email "to help continue [its] efforts over the summer months." ECF No. 1 ¶ 38.

Defendant argues that the "fact that a not-for-profit entity merely solicited funds and also published advertisements" is insufficient to establish that any funds were donated. ECF No. 20. This grossly understates the allegations in the complaint. The solicitation email requested a donation for a specific purpose—to help "continue [defendant's] efforts over the summer months" to highlight Ernst. ECF No. 1 ¶ 34. Defendant then continued its $33,000 digital advertisement

---

[1] The parties argue extensively over whether the Google and Facebook advertisements constitute issue advocacy or advocacy for the purpose of influencing any election, and thus whether the money spent on that advertising qualifies as "expenditures." *See* ECF No. 13 at 33–34; ECF No. 19 at 34–35. Because this Court finds that plaintiff has successfully alleged that defendant received at least $1,000 in contributions for the purposes of influencing a federal election, it need not discuss that issue here.

blitz during the summer. *Id.* ¶ 38. Drawing all reasonable inferences in plaintiff's favor, as this Court is required to do, plaintiff has raised sufficient facts to plausibly claim at least $1,000 of that $33,000 came from solicited funds. Defendant's argument that plaintiff has failed to identify a *specific* individual donation to Iowa Values is unavailing, given that the injury in question is defendant's alleged illegal withholding of its donors' identities. ECF No. 120 at 7.

The solicitation email and attached memorandum also raise a "reasonable inference" that any contributions made in response to this email were "for the purpose of influencing any election for [f]ederal office," 52 U.S.C. § 30101(8)(a)(i)—specifically, Ernst's election for federal office in 2020. The documents included repeated references to Ernst's election and election strategy, including targeting suburban women voters who represent the "'firewall' between winning and losing in 2020 for Senator Ernst." ECF No. 1 ¶ 33. The strategy memorandum discusses the exact number of votes Ernst won by in 2014 and which of those voters are "vulnerable" to being "peeled off in 2020" from "Ernst's winning coalition." *Id.* ¶ 35. In particular, the memorandum planned to communicate with members of the Iowa electorate that "will be determinant in winning or losing in 2020." *Id.* Defendant argues that this email solicited contributions only for the purposes of issue advocacy. ECF No. 13-1 at 34–35. But while the email pays lip service to policy issues, the only real issue discussed in either document is the issue of Ernst's election. Plaintiff has pleaded a claim plausible on its face that in 2019, defendant received $1,000 in contributions for the purpose of influencing the 2020 Senate election in Iowa.

### ii. Plaintiff Pleaded Sufficient Facts To Establish A Plausible Claim That Defendant's "Major Purpose" Is Ernst's Election

Establishing $1,000 in qualifying contributions is not enough—plaintiff must plausibly claim that defendant's "major purpose" is the "nomination or election of a candidate." *Buckley*, 424 U.S. at 79. This judicially created prong of the political committee test is crucial to protecting

the First Amendment rights of "issue-oriented groups, lobbying organizations, religious bodies, and communal associations of all sorts" from the potential overbreadth of FECA. *Fed. Election Comm'n v. Machinists Non-Partisan Pol. League*, 655 F.2d 380, 391 (D.C. Cir. 1981).

The FEC has not adopted a clear rule to guide courts when making major purpose determinations, instead preferring to make "case-by-case" determinations for the past forty-five years. *Shays v. Fed. Election Comm'n*, 424 F. Supp. 2d 100, 106 (D.D.C. 2006). The Supreme Court has explained that one way an organization can satisfy the "major purpose" requirement is through sufficiently extensive campaign activity spending. *Fed. Election Comm'n v Mass. Citizens for Life, Inc.*, 479 U.S. 238, 262 (1986). But is just one of many ways to prove an organization's major purpose. Whether an organization has a major purpose of electing a candidate involves a "fact-intensive analysis of a group's campaign activities compared to its activities unrelated to its campaigns." Fed. Election Comm'n, *Supplemental Explanation & Justification Regarding Political Committee Status*, 72 Fed. Reg. 5,595, 5,601 (Feb. 7, 2007). This analysis can include the evaluation of both "public statements" and private conduct, statements, and spending. *Id.*

As plaintiff notes, given the fact-heavy analysis required to determine an organization's major purpose, such a determination is particularly ill-suited for the motion to dismiss stage. ECF No. 19 at 29. Luckily, the Court is not required to make that determination. All that is required is to determine whether plaintiff has pleaded sufficient allegations to raise a plausible claim that Iowa Values' major purpose was to elect Ernst. And plaintiff has. Plaintiff has alleged that defendant's circulated strategy memorandum identifies just one goal: to shore up support for Ernst in the 2020 election. ECF No. 1 ¶ 34–38. It has highlighted advertisements by defendant that represent blatant support for Ernst with little or no discussion of other issues. *Id.* ¶ 25. Plaintiff has asserted that defendant publicly announced an expensive advertising blitz to start the "election-long effort by

Iowa Values to highlight the work of Sen. Joni Ernst." *Id.* ¶ 26.  Plaintiff has alleged more than

enough to state a plausible claim that Iowa Values' major purpose was to elect Ernst in 2020.

**E.  The Court Will Not Strike The Allegations From 2020 Or The Request For Attorney's Fees From The Complaint**

Finally, defendant moves to strike two portions of the complaint: first, paragraphs 40 and

41, which describe conduct that occurred after plaintiff filed its initial complaint with the FEC;

and second, plaintiff's request for attorney's fees. ECF No. 13-1 at 28–29. For the reasons

explained below, the Court will not strike either portion of the complaint.

While a court may strike from a pleading any "redundant, immaterial, impertinent, or

scandalous matter," Fed. R. Civ. P. 12(f), such motions are typically disfavored. *Wiggins*, 853 F.

Supp. at 457. Allegations, for example, must be both irrelevant and prejudicial to warrant being

struck from the complaint. *Id.* And while it is true that the Court cannot consider claims that

occurred after plaintiff's original administrative complaint to determine the *merits* of this case, if

this Court finds that defendant has been acting as a political committee, these paragraphs may be

relevant to the question of *remedy. See CREW*, 410 F. Supp. at 21–22 ("While the Court agrees

that it may not consider facts concerning time periods that have not been administratively

exhausted to determine liability, it doubts it is so constrained in fashioning a remedy."). 

Accordingly, the Court will not strike paragraphs 40 and 41 as irrelevant.

This Court will also follow other courts in this district in denying defendant's motion to

strike plaintiff's prayer for attorney's fees. "Defendant's motion to strike plaintiff's claim

for attorney's fees may very well be correct," if there are no statutory provisions authorize

attorney's fees. *Fleming v. AT&T Info. Sys., Inc.*, No. 87-CV-1329, 1987 WL 17600, at *2 (D.D.C.

Sept. 16, 1987). But the Court "declines to strike [defendant's] request at this juncture because the

issue of fees is not ripe (and may never be) and the parties have not briefed other potential sources of fee-shifting authority." *CREW*, 410 F. Supp. 3d at 30 n.11.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction, to dismiss for failure to state a claim, and to strike will be **DENIED** by separate Order.

Date: November 19, 2021

Hon. Royce C. Lamberth
United States District Judge

20