UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAMPAIGN LEGAL CENTER**, | |
| *Plaintiff,* | |
| v. | **Case No. 1:21-cv-389-RCL** |
| **IOWA VALUES**, | |
| *Defendant.* | |

## MEMORANDUM OPINION

This case is the second in a series of related cases in which plaintiff Campaign Legal Center ("CLC") has sought to vindicate alleged violations of the Federal Election Campaign Act ("FECA") by defendant Iowa Values. CLC first sued the Federal Election Commission ("the FEC" or "the Commission") for failing to act in a timely manner on an administrative complaint that CLC filed against Iowa Values in 2019. The FEC did not appear, and the Court entered default judgment against the Commission, declaring that it had failed to act on CLC's complaint and that that failure was contrary to law. Still seeing no indication in the following months that the FEC had acted, CLC filed the present action against Iowa Values, seeking an adjudication by this Court of the underlying alleged FECA violations.

Before the Court is Iowa Values's Motion for Summary Judgment, ECF No. 63. Newly public FEC records have revealed that during the pendency of this litigation, the Commission declined to pursue an investigation of the complaint against Iowa Values and has now formally closed the administrative docket. Citing those records, Iowa Values argues that this Court never had jurisdiction over the present case, or, in the alternative, that the case is now either constitutionally or prudentially moot. The Court disagrees and concludes that it has jurisdiction

and that the case is not moot despite the FEC's newly revealed action. Accordingly, the Court will **DENY** Iowa Values's motion for summary judgment.

## I.   BACKGROUND

### A. Statutory and Regulatory Background

The FEC is composed of six commissioners, no more than three of whom may belong to the same political party. 52 U.S.C. § 30106(a)(1). By statute, "[a]ll decisions of the Commission with respect to the exercise of its duties and powers under [FECA] shall be made by a majority vote of the members of the Commission." *Id.* § 30106(c). Furthermore, certain actions require a vote of at least four commissioners, regardless of the number of abstentions or vacancies. *Id.*

FECA allows "[a]ny person who believes a violation of this Act or of chapter 95 or chapter 96 of Title 26 has occurred" to "file a complaint with the Commission." 52 U.S.C. § 30109(a)(1). Once the FEC receives such a complaint, it can vote to do one of four things: (1) find "reason to believe" a violation occurred and investigate the complaint further, (2) dismiss the complaint, (3) dismiss the complaint with admonishment, or (4) find "no reason to believe" a violation occurred. *See* 72 Fed. Reg. 12545, 12545–46 (Mar. 16, 2007). All four actions require a vote of at least four commissioners. *Id.* Thus, when the commissioners deadlock by a vote of 3–3, the vote fails. But FECA's implementing regulations also contemplate an additional procedural step after a vote on a complaint fails: a "vote[] to close [] an enforcement file." 11 C.F.R. § 5.4(a)(4).

If the FEC dismisses an administrative complaint or fails to act on it, the complainant may seek recourse in the courts through a two-part procedure set out in 52 U.S.C. § 30109(a)(8). First, "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party under [§ 30109(a)(1)] or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia." *Id.* § 30109(a)(8)(A). The FEC may authorize counsel

to appear and defend such a case only by a vote of four or more commissioners. *See id.* §§ 30106(c), 30107(a)(6). Whether or not the FEC appears, the court hearing the petition "may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days." *Id.* § 30109(a)(8)(C). Second, if the FEC fails to conform within 30 days, "the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." *Id.*

### B.  Factual and Procedural Background

The factual history of this matter is set forth at greater length in the Court's opinion denying Iowa Values's motion to dismiss. *See Campaign Legal Ctr. v. Iowa Values* ("Mot. to Dismiss Op."), 573 F. Supp. 3d 243, 249–50 (D.D.C. 2021). Here, the Court will explain only as much background as is necessary to resolve the present motion for summary judgment.

#### 1.  CLC's administrative complaint and delay suit

CLC filed a complaint with the FEC on December 19, 2019, alleging that Iowa Values violated FECA by failing to register as a political action committee and report certain expenditures despite its advocacy in support of Iowa Senator Joni Ernst. Defs.' St. of Undisputed Material Facts ("DSUMF") ¶¶ 14–16, ECF No. 64; Pl.'s St. of Undisputed Material Facts ("PSUMF") ¶¶ 1–2, ECF No. 67-1. At the time, the FEC lacked a quorum, but it regained its quorum on June 5, 2020. DSUMF ¶ 19 & n.1; PSUMF ¶ 4.

On June 30, 2020, CLC filed an action in this Court alleging that the FEC had unlawfully failed to act on its complaint. Compl., *Campaign Legal Ctr. v. FEC*, No. 1:20-cv-1778, ECF No. 1; DSUMF ¶ 20; PSUMF ¶¶ 7–8. That case was assigned to the undersigned. The FEC subsequently lost its quorum on July 3, 2020. DSUMF ¶ 21; PSUMF ¶ 12. Whether because of its

loss of a quorum or for some other reason,[1] the FEC never entered an appearance in the case CLC

filed against it. DSUMF ¶ 23; PSUMF ¶ 15. Accordingly, on October 9, 2020, the Clerk entered

default against the FEC, *see* No. 1:20-cv-1778, ECF No. 13, and on October 14, 2020, the Court

entered default judgment against the FEC and ordered it to act on CLC's administrative complaint

within 90 days—that is, by January 12, 2021, *see* No. 1:20-cv-1778, ECF No. 14.[2]

On January 27, 2021, CLC filed a motion for the Court to declare that the FEC had failed

to conform with its order. *See* No. 1:20-cv-1778, ECF No. 22. On February 5, 2021, having

received no indication that the FEC had acted on CLC's complaint, the Court entered an order

declaring that the CLC had failed to conform with its earlier order and authorizing CLC to file a

citizen suit. *See* No. 1:20-cv-1778, ECF No. 24.

## 2. CLC's citizen suit

On February 12, 2021, one week after the Court entered its authorizing order in the delay

suit, CLC filed a citizen suit against Iowa Values in this Court, *see* Compl., ECF No. 1, along with

a notice designating this case as related to the earlier delay suit, ECF No. 3, resulting in this case

also being assigned to the undersigned.

Just over a month later, Iowa Values filed a motion to dismiss for lack of subject-matter

jurisdiction and failure to state a claim, ECF No. 13, arguing that (1) the FEC's failure to act was

not contrary to law, (2) FECA's citizen-suit provision was unconstitutional, (3) CLC was not itself

injured by Iowa Values's alleged FECA violations and thus lacked standing to sue, and (4) the

complaint failed to plausibly allege any FECA violations. The Court rejected all four arguments

---

[1] The parties dispute whether the FEC received a properly served copy of the summons and complaint in time to approve an appearance in the matter before it lost its quorum. *See* DSUMF ¶¶ 20–23; PSUMF ¶¶ 9–12. The precise reason why the FEC did not appear, however, is immaterial for purposes of the present summary judgment motion.

[2] The Court acknowledges that this deadline is longer than the 30 days required by the statute. *See* 52 U.S.C. § 30109(a)(8)(C). Had the Court ordered the FEC to conform within 30 days, the deadline would have been November 13, 2020.

and denied the motion to dismiss. *See* Mot. to Dismiss Op., 573 F. Supp. 3d at 260. Of particular note here, although the Court ultimately rejected Iowa Values's argument that the FEC had not unlawfully failed to act, it allowed Iowa Values "to relitigate the merits of" the delay suit, "because a court 'cannot proceed at all' without subject matter jurisdiction," and "[o]nly" when the procedural requirements set out in 52 U.S.C. § 30109(a)(8) are met "can a court have jurisdiction over a suit filed by a private complainant against a potential violator." *Id.* at 252 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

Thereafter, the case proceeded to discovery. Both parties filed motions to compel discovery, ECF Nos. 31, 36, and Iowa Values filed a motion to stay the case until it could be ascertained whether the FEC had in fact acted on CLC's complaint, ECF No. 38.

In a letter dated September 1, 2022, while those motions were still pending, the FEC disclosed to Iowa Values that it had closed the file on CLC's complaint. DSUMF ¶ 43; PSUMF ¶ 35; *see* Letter of Acting FEC General Counsel to Defendant (Sept. 1, 2022), Ex. I to DSUMF, ECF No. 64-9. Shortly thereafter, the FEC made public records of a number of votes it had taken on the complaint. DSUMF ¶ 46; PSUMF ¶ 36. Most significantly, the FEC had failed by a deadlocked 3–3 vote on January 26, 2021 to find reason to believe that Iowa Values had violated FECA, *see* Certification of Failure to Find Reason to Believe, Ex. C to DSUMF, ECF No. 64-3, and on January 28, 2021 to close the file on CLC's complaint, *see* Certifications of Failure to Close at 1, Ex. E to DSUMF, ECF No. 64-5. Subsequently, the FEC had once again failed by a deadlocked 3–3 vote to close the file on January 11, 2022. *See* Certifications of Failure to Close at 2. The three Republican commissioners who voted not to find reason to believe had given a statement of reasons for their vote in May of 2022, in which they cited what they saw as evidentiary shortfalls as to certain allegations and legal errors as to others. *See* Statement of Reasons of

Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III at 5–19, Ex. D to DSUMF, ECF No. 64-4. The statement of reasons also explained that the two Democratic commissioners and one independent commissioner who voted to find reason to believe were engaged in a strategy across multiple matters, including this one, of deliberately voting against administratively closing files, appearing in court, or making records public, in order to artificially trigger FECA's citizen-suit provision. *See id.* at 20–23.[3] On August 29, 2022, the FEC had succeeded in closing the file on CLC's complaint by a vote of 4–1. *See* Certification of Vote to Close, Ex. J to DSUMF, ECF No. 64-10.

The following timeline summarizes the pertinent dates:

| | |
|---|---|
| December 19, 2019 | CLC files administrative complaint with FEC |
| June 30, 2020 | CLC files delay complaint in this Court |
| October 9, 2020 | Clerk of Court enters default against FEC in delay suit |
| October 14, 2020 | Court grants default judgment against FEC in delay suit |
| November 13, 2020 | Deadline for FEC to act under 52 U.S.C. § 30109(a)(8)(C) |
| January 12, 2021 | Deadline for FEC to act under Court's default judgment order |
| January 26, 2021 | FEC fails by deadlocked 3–3 vote to find reason to believe Iowa Values violated FECA and investigate further |
| January 27, 2021 | CLC files motion in delay suit for Court to declare that FEC unlawfully failed to act |
| January 28, 2021 | FEC fails by deadlocked 3–3 vote to close file on CLC's administrative complaint |
| February 5, 2021 | Court grants CLC's motion in delay suit, finds that FEC failed to conform with Court's order, and authorizes CLC to file citizen suit |

---

[3] A June 8, 2021 New York Times story corroborates this account. *See* Shane Goldmacher, "Democrats' Improbable New F.E.C. Strategy: More Deadlock than Ever," N.Y. Times (June 8, 2021), https://www.nytimes.com/2021/06/08/us/politics/fec-democrats-republicans.html. In it, one of the Democratic commissioners acknowledges this strategy but contends that it is a justified response to what she sees as her colleagues' bad-faith refusal to investigate clearly meritorious allegations of FECA violations. *See id.*

| February 12, 2021 | CLC files citizen suit in this Court |
| August 29, 2022 | FEC succeeds by 4–1 vote in closing file on CLC's administrative complaint |

Of particular note for present purposes, the failed reason-to-believe vote occurred two weeks after the deadline for action that the Court imposed in the delay suit, and over two months after the 30-day minimum contemplated by the statute before a plaintiff may file a citizen suit, but the day before CLC filed its motion for the Court to declare that the FEC had failed to conform and over a week before the Court granted that motion and entered its order authorizing the citizen suit. The successful file-closure vote occurred about a year and a half after CLC filed the citizen suit.

On December 2, 2022, after learning of the FEC's votes on CLC's administrative complaint, Iowa Values filed the present motion for summary judgment, arguing that the Court lacked subject-matter jurisdiction or, in the alternative, should decline to exercise its jurisdiction under the doctrine of prudential mootness. CLC filed its opposition on January 13, 2023, ECF No. 67, and Iowa Values filed its reply on February 10, 2023, ECF No. 68. Thereafter, the Court denied as moot Iowa Values's motion to stay the case, and since the summary judgment motion raised colorable jurisdictional issues, the Court denied the only still-pending motion to compel without prejudice to refiling, in order to save the time and expense of engaging in discovery that was not relevant to the summary judgment motion in the event it was granted. *See* ECF No. 69 at 2. In the following months, the parties filed a number of notices of supplemental authority and responses thereto, all centered on either decisions on similar FECA citizen suits by other courts in this District and the Circuit or decisions of the Supreme Court concerning the jurisdictional nature (or lack thereof) of statutory bars to suit. *See* ECF Nos. 70–80. The summary judgment motion is now ripe for review.

## II.   LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court evaluating a summary judgment motion must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Arthridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.  Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks and citation omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Three types of jurisdictional defects are potentially relevant in this case. First, a court might lack subject-matter jurisdiction if a statutory bar to jurisdiction applies. *See, e.g.*, *Castaneira v. Mayorkas*, No. 1:22-cv-1485-RCL, — F. Supp. 3d —, 2023 WL 4420237, at *4–7 (D.D.C. July 10, 2023). Second, a court might lack subject-matter jurisdiction if a plaintiff lacks Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff bears the burden of establishing standing by demonstrating (1) a concrete injury in fact that is (2) traceable to the complained-of conduct and (3) redressable by the relief sought. *Id.* Third, a court might lack subject-matter jurisdiction if a case becomes moot—that is, if "[t]he requisite personal interest that must exist at the commencement of the litigation (standing)" does not "continue through its

8

existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks and citation omitted). The defendant, not the plaintiff, "bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022).

### C. Prudential Mootness

"Even when a case is not moot in the Article III sense, it will sometimes be 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Gordon v. Holder*, 85 F. Supp. 3d 78, 81 (D.D.C. 2015) (quoting *Chamber of Commerce of U.S. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)). The court may dismiss such a case as prudentially moot. *See id.* at 84–85. The choice to do so is a matter of equitable discretion, not constitutional law. *See Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019–20 (D.C. Cir. 1991).

### III.    DISCUSSION

Iowa Values argues that it is entitled to summary judgment because (1) CLC lacked Article III standing at the outset, or the case became moot in the Article III sense when the FEC disclosed its voting records; (2) the FEC's action on CLC's administrative complaint prior to the commencement of this citizen suit places it outside the Court's grant of statutory jurisdiction; and (3) that action renders the case prudentially moot. The Court disagrees. Nothing about the FEC's action affects CLC's Article III standing, because that standing has always been predicated on an injury stemming from Iowa Values's conduct, not the FEC's. And although the Court agrees with Iowa Values that courts lack jurisdiction to hear citizen suits under FECA where the failure-to-act requirement is not met, the FEC in fact did not act on CLC's complaint within the time period required by the statute. Finally, Iowa Values's arguments in favor of prudential mootness are

insufficient to convince the Court to decline to exercise its jurisdiction. Accordingly, Iowa Values is not entitled to summary judgment.

### A. CLC Has Article III Standing and Never Lost It

As an initial matter, the Court reaffirms that CLC has Article III standing to bring this case, even though the FEC took a failed reason-to-believe vote before the citizen suit commenced and has now closed the administrative file. In its opinion denying Iowa Values's motion to dismiss, the Court rejected Iowa Values's argument that CLC had not alleged an injury in fact, reasoning that CLC alleged a cognizable "informational injury" because "if the allegations are true, [Iowa Values] disregarded FECA and did not properly register or publicly disclose the required information." Mot. to Dismiss Op., 573 F. Supp. 3d at 255.

Iowa Values now argues that that allegation of an informational injury has proved to be untrue from the outset, and thus CLC never had standing to sue, because "[w]e now know that the FEC voted on the merits of CLC's allegations and did not find reason to believe that Iowa Values violated FECA." Def.'s Reply at 4. Iowa Values also argues that even if CLC once had Article III standing, the case is now moot in the Article III sense, because the *release* of the FEC's voting records redresses CLC's informational injury. *See* Def.'s Mot. for S.J. at 15–16.

Both arguments are without merit because they misconstrue the nature of the alleged informational injury. As the Court made clear in its motion to dismiss opinion, the injury stems from a lack of information about *Iowa Values's* activities, not the FEC's. That injury persists, because Iowa Values still has not publicly disclosed the information that CLC contends it is legally required to disclose. Accordingly, the subsequent revelations about the FEC's action on CLC's administrative complaint do not affect CLC's Article III standing.

**B. The Court Has Subject-Matter Jurisdiction Pursuant to FECA**

The Court next turns to the question of its statutory jurisdiction to hear CLC's citizen suit in light of the action the FEC took on CLC's administrative complaint. Iowa Values argues that FECA's requirement that the FEC fail to act before a complainant may file a citizen suit, *see* 52 U.S.C. § 30109(a)(8)(C), is jurisdictional, while CLC argues that it is a non-jurisdictional claims-processing rule. Further, Iowa Values argues that the requirement has not been met in this case since the FEC did in fact act on CLC's administrative complaint, while CLC contends that it has been met, either because the FEC did not act or because it did not *timely* act. The Court agrees with Iowa Values in part and CLC in part. The failure-to-act requirement is jurisdictional, but it has been met in this case, because the first statutorily significant "action" occurred well after the deadline by which the FEC must act before a complainant may file citizen suit.

**1. Section 30109(a)(8)'s failure-to-act requirement is jurisdictional**

First, the Court must determine whether it would in fact lack jurisdiction to hear CLC's citizen suit if the failure-to-act requirement were not met. Two other courts in this District have already held that the failure-to-act requirement is jurisdictional. *See Campaign Legal Ctr. v. 45Committee, Inc.* ("*45Committee*"), No. 1:22-cv-1115-APM, — F. Supp. 3d —, 2023 WL 2825704, at *3–5 (D.D.C. Mar. 31, 2023); *Heritage Action for Am. v. FEC*, Nos. 1:22-cv-1422-CJN, 1:22-cv-1248-CJN, 2023 WL 4560875, at *10–11 (D.D.C. July 17, 2023). This Court finds their reasoning persuasive and agrees.

The D.C. Circuit held in *Perot v. FEC* that the preconditions to judicial review set out in § 30109(a) are "jurisdictional." 97 F.3d 553, 559 (D.C. Cir. 1996). In that case, a third-party presidential candidate sued the FEC for allowing the Commission on Presidential Debates to use certain selection criteria for candidates to participate in presidential debates, which he alleged

11

violated FECA, and he sought an order directing the FEC to enjoin the use of those criteria or take immediate action on a related administrative complaint he had filed. *Id.* at 557. The district court dismissed for lack of jurisdiction, and the Circuit affirmed, on the ground that FECA's preconditions to judicial review are "jurisdictional," and if they are not met, the procedures set out for administrative review by the FEC are the sole remedy available for civil violations of the statute. *Id.* at 557–59. One would think that should resolve the issue, but CLC argues that *Perot* does not control here for two reasons. *See* Pl.'s Mar. 28, 2023 Not. of Supp. Auth. at 1–2, ECF No. 70; Pl.'s Resp. to Def.'s Apr. 4, 2023 Not. of Supp. Auth. at 2–3, ECF No. 72; Pl.'s May 2, 2023 Not. of Supp. Auth. at 1–3, ECF No. 74; Pl.'s Resp. to Def.'s Aug. 4, 2023 Not. of Supp. Auth., 2–3, ECF No. 80.[4]

First, CLC argues that the Supreme Court's recent decision in *Wilkins v. United States*, 143 S. Ct. 870 (2023), abrogates *Perot*. In *Wilkins*, the Supreme Court held that the Quiet Title Act's 12-year time bar was not jurisdictional, applying a "clear statement rule" under which courts should not hold statutory bars to suit to be jurisdictional unless the text clearly makes them so. *Id.* at 876–77. But while *Wilkins* could have some relevance were the Court writing on a clean slate, that case did not overrule the Circuit's binding holding in *Perot*. Only the Supreme Court or an *en banc* panel of the Circuit can overrule Circuit precedent. *See Agudas Chasidei Chabad of U.S. v. Russian Federation*, No. 1:05-cv-1548-RCL, — F. Supp. 3d —, 2023 WL 2239257, at *6 (D.D.C. Feb. 27, 2023). A Supreme Court decision may do so implicitly if it completely "eviscerate[s]" prior Circuit precedent, *see Dellums v. NRC*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988), but whether a decision has done so is a determination for a panel of the Circuit—not this Court—to make, *see*

---

[4] Because of the significant volume of notices of supplemental authority and responses thereto filed by both parties in this case, the Court will refer to them by the date the notice was filed.

*id.* ("[A] circuit precedent eviscerated by subsequent Supreme Court cases is no longer binding *on a court of appeals.*" (emphasis added)).

Undeterred, CLC argues that *Wilkins* requires courts to ignore any otherwise binding precedent holding that a statutory precondition to suit is jurisdictional in the absence of a clear statement. More precisely, *Wilkins* instructed that "[i]f a decision simply states that 'the court is dismissing "for lack of jurisdiction" when some threshold fact has not been established,' it is understood as a 'drive-by jurisdictional rulin[g]' that receives 'no precedential effect.'" 143 S. Ct. at 878 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006)). In other words, *Wilkins* does not invite courts to ignore otherwise binding precedent holding a statutory bar to suit to be jurisdictional. Rather, it requires courts to determine whether such precedent really means what it appears to say.

*Perot* was not a "drive-by jurisdictional ruling," and the Court understands it to have meant what it said about FECA's preconditions to suit being jurisdictional. The Circuit reasoned that "Congress could not have spoken more plainly in limiting the jurisdiction of federal courts to adjudicate claims under the FECA," noting in particular that "[t]he statute explicitly states that '[e]xcept as provided in [52 U.S.C. § 30109(a)(8)], the power of the [FEC] to initiate civil actions under [52 U.S.C. § 30107(a)(6)] shall be the exclusive civil remedy for the enforcement of the provisions of this Act.'" *Id.* at 558 (quoting 52 U.S.C. § 30107(e)). The Circuit further reasoned that "Congress could have chosen to allow judicial intervention" where the Commission would not be able to act on a complaint until after the event that occasioned it had passed, but "did not do so," and "a court is not free to disregard that congressional judgment." *Id.* at 559. In sum, the Circuit did not carelessly throw about the word "jurisdictional" when it meant something else—it conducted a detailed analysis of whether Congress intended to authorize courts to hear suits when

FECA's statutory preconditions were not met and determined that Congress did not. *Perot* squarely held that FECA's statutory preconditions to suit are jurisdictional, and this Court is bound by that holding unless and until the Supreme Court or the Circuit overrules it.

Second, CLC argues that *Perot* is distinguishable because it did not involve a citizen suit. But while that is true as a matter of procedural history, the Circuit did not limit its holding to cases like the one before it, in which the plaintiff sought to bypass the ordinary delay suit and seek an affirmative enforcement injunction outside the procedures that FECA contemplates. Rather, the Circuit held broadly that courts may not "ignore the jurisdictional requirements of" § 30109(a). *Perot*, 97 F.3d at 559. This Court cannot disregard that clear holding merely because it could have been narrower.

Finally, even if *Perot* for some reason did not control here, the Court would hold based on its own *de novo* analysis that § 30109(a)(8)'s failure-to-act requirement embodies the sort of "clear statement" required to make a bar to suit jurisdictional under *Wilkins*. As the Circuit noted in *Perot*, § 30107(e) states that, "[e]xcept as provided in section 30109(a)(8) . . . , the power of the Commission to initiate civil actions under subsection (a)(6) shall be the exclusive civil remedy for the enforcement of the provisions of this Act." 52 U.S.C. § 30107(e). That is about as clearly as Congress could create a jurisdictional bar short of expressly using the *word* "jurisdictional." And § 30109(a)(8), in turn, sets out the two-step process of filing a delay suit and then, if the FEC fails to conform with the court's order, filing a citizen suit. In other words, taken together, § 30107(e) and § 30109(a)(8) create a jurisdictional bar with an exception. Courts are prohibited from hearing any private civil suit claiming that a defendant violated FECA unless the plaintiff can demonstrate that the statutory preconditions to a citizen suit are met.

For these reasons, the Court holds that it lacks subject-matter jurisdiction to hear a citizen suit under FECA where § 30109(a)(8)'s failure-to-act requirement was not in fact met.

## 2. The FEC failed to act within the time prescribed by statute

Since the failure-to-act requirement is jurisdictional, the Court must assure itself that that requirement is met before proceeding. *See Steel Co.*, 523 U.S. at 94. The Court concludes that the FEC failed to act within the time prescribed by statute, and thus that § 30109(a)(8) grants the Court jurisdiction over this case.

### (i) The Court's orders in the delay suit do not bar litigation of this issue

As an initial matter, CLC argues that Iowa Values should not be allowed at this stage to "relitigate CLC's delay suit against the FEC" because citizen suits under FECA are separate actions from delay suits and are not intended to encompass a form of "quasi-appellate review." Pl.'s Opp'n at 16. That argument is unpersuasive for two reasons.

First, caselaw and the Federal Rules of Civil Procedure make clear that courts must entertain disputes over subject-matter jurisdiction no matter when they are raised. *See, e.g.*, *Arbaugh.*, 546 U.S. at 506; Fed. R. Civ. P. 12(h)(3). For the same reason, the Court allowed Iowa Values to relitigate at the motion to dismiss stage the question of whether the FEC's inaction was contrary to law, albeit to no avail. *See* Mot. to Dismiss Op., 573 F. Supp. 3d at 252–54 (citing *Steel Co.*, 523 U.S. at 94). Regardless of the relationship between delay suits and related citizen suits, the citizen-suit court must still assure itself of its jurisdiction to proceed.

Second, the question of whether the FEC ever in fact acted on CLC's administrative complaint was never actually litigated before the Court in the delay suit. This case is before the Court in an unusual procedural posture, in which the FEC failed to appear in the delay suit, and thus its failure to act was determined by default judgment, which has no preclusive effect. *See*

*Arizona v. California*, 530 U.S. 392, 414 (2000). For that very reason, the Circuit recently affirmed an order denying an organization's motion to intervene in a delay suit where the FEC had defaulted, noting that that organization "was not a party to the default judgment" in the delay suit "and not would be prevented from arguing that Section 30109(a)(8)(C)'s prerequisites have not been met" in the subsequent citizen suit. *Campaign Legal Ctr. v. FEC*, 68 F.4th 607, 611 (D.C. Cir. 2023). In an ordinary case in which the FEC appeared and defended itself, the doctrine of issue preclusion would likely bar the citizen-suit court from reconsidering the delay court's finding that the statutory preconditions to a citizen suit were met.

For these reasons, the question of whether the failure-to-act requirement was met is properly before this Court.

#### (ii) The relevant "action" occurred after the time prescribed by statute to act

The Court turns now to the merits of Iowa Values's jurisdictional argument. Iowa Values argues that the failure-to-act requirement is not met because the FEC "acted" on CLC's administrative complaint on January 26, 2021, when it deadlocked on a reason-to-believe vote. *See* Def.'s Mot. for S.J. at 9–11.[5] CLC responds that a deadlocked vote is not a statutorily significant "action," and at any rate, the deadlocked vote in this case occurred after the statutory deadline for action and the deadline the Court imposed for compliance with its order in the delay suit. *See* Pl.'s Opp'n at 20–33. The Court agrees with Iowa Values in part and CLC in part. Although the FEC "acted" when it failed by a deadlocked vote to find reason to believe any FECA violation occurred, that action occurred after both the 30 days that the statute says a plaintiff must wait before filing a citizen suit and the 90 days the Court gave in its order in the delay suit.

---

[5] Iowa Values also seems to suggest that the FEC "acted" on September 25, 2020, when the Commission's General Counsel "completed its report and recommendation and submitted it to the Commissioners for their consideration." Def.'s Mot. for S.J. at 10 (citing DSUMF ¶¶ 52–53). But Iowa Values does not explain how the General Counsel's actions could constitute a statutorily significant act by the *Commission*, nor does it cite any precedent to that effect.

First, the deadlocked reason-to-believe vote does constitute "action" for purposes of the statutory preconditions to suit. As Iowa Values notes, *see* Mot. for S.J. at 10–11, the Circuit has characterized a failed reason-to-believe vote as a "*decision . . . to decline enforcement,*" *Citizens for Responsibility and Ethics in Washington v. FEC*, 993 F.3d 880, 891 (D.C. Cir. 2021), and has even acknowledged in dicta that "the treatment of probable cause deadlocks as agency action is baked into the very text of" FECA, *Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165, 1170 (D.C. Cir. 2016). Furthermore, the Circuit has held that a "dismissal due to a deadlock" is a "dismissal" subject to judicial review under § 30109(a)(8). *Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1133–34 (D.C. Cir. 1987) (Ruth Bader Ginsburg, J.); *see also Common Cause v. FEC*, 842 F.2d 436, 448–51 (D.C. Cir. 1988). Applying those principles, both of the courts in this District to consider the question have held that a deadlocked reason-to-believe vote is a significant "action" for purposes of § 30109(a)(8). *See 45Committee*, 2023 WL 2825704, at *4; *Heritage Action*, 2023 WL 4560875, at *10. This Court agrees.

CLC principally argues that a deadlocked reason-to-believe vote does not constitute action because it does not close the case, and it is theoretically possible that the Commission could take a successful vote in the future. *See* Pl.'s Opp'n at 22–31. It may be true that a deadlock dismissal is not, strictly speaking, a *final* dismissal, and that further action in the future remains possible. But CLC's argument effectively asks the Court to read extra words into the statute. By its plain terms, § 30109(a)(8) authorizes a citizen suit where there is "a failure of the Commission to act," 52 U.S.C. § 30109(a)(8)(A), not where there is a failure of the Commission to take *final* action.

For similar reasons, it does not affect the Court's analysis here that, as CLC correctly observes, "the DC Circuit has treated the date the Commission closed the file—not the date of any previous reason-to-believe votes—as 'the date of the dismissal' that triggers § 30109(a)(8)(B)'s

jurisdictional 60-day deadline for a complaint to sue the agency to challenge the dismissal." Pl.'s

Opp'n at 26 (citing *Citizens for Responsibility and Ethics in Washington v. FEC*, 892 F.3d 434,

436 (D.C. Cir. 2018); *Jordan v. FEC*, 68 F.3d 518, 519 (D.C. Cir. 1995); *Spannaus v. FEC*, 990

F.2d 643, 644 (D.C. Cir. 1993)). By setting a special deadline for "the case of a dismissal of a

complaint by the Commission," 52 U.S.C. § 30109(a)(8)(B), the statute expressly recognizes that

a formal "dismissal" is not the only type of action that can be significant for purposes of

§ 30109(a)(8). Whether or not a deadlocked reason-to-believe vote is formally a "dismissal," it is

still a statutorily significant action.

Finally, CLC argues that the Circuit's recent decision in *End Citizens United PAC v. FEC*

("*ECU*"), 69 F.4th 916 (D.C. Cir. 2023), "made clear that because the [FEC] may act only by the

vote of four of its six Commissioners under its governing statute, a deadlocked reason-to-believe

vote does not qualify as a dismissal or any other FEC 'action.'" Pl.'s June 14, 2023 Not. of Supp.

Auth. at 1, ECF No. 77. *ECU* did no such thing. In that case, the Circuit held that the district court

erred by treating a statement of reasons given by the controlling commissioners long after a

deadlocked reason-to-believe vote had occurred as the Commission's justification for its deadlock

dismissal. *ECU*, 69 F.4th at 919–24. Along the way, the Circuit rejected an argument that an earlier

vote to affirmatively dismiss the complaint in an exercise of prosecutorial discretion, which had

also failed due to deadlock, was "all the explanation that is required." *Id.* at 921. True, as CLC

notes, the Circuit stated that "before the Commission's unanimous vote to 'close the file,' *several

other votes also failed to get the requisite four votes for the Commission to act*, and there is no

suggestion that those votes impart the Commission's reason for the dismissal." *Id.* (emphasis

added). But CLC takes that statement out of context. Because the plaintiff in *ECU* brought a suit

under § 30109(a)(8)(A) challenging a *dismissal* rather than a *failure to act*, the Circuit was not

deciding whether any "action" had occurred for purposes of a delay suit. Rather, it was simply explaining that the fact of a failed vote to take some *affirmative* act on the complaint does not in itself amount to an *explanation* of the ultimate disposition.

So, the FEC did act on CLC's administrative complaint on January 26, 2021 when it failed by a deadlocked vote of 3–3 to find reason to believe Iowa Values violated FECA. But that does not end the matter. Importantly, § 30109(a)(8)(C) authorizes a citizen suit if the FEC does not "conform with" the delay court's order "declar[ing] that . . . the failure to act is contrary to law" "*within 30 days*." 52 U.S.C. § 30109(a)(8)(C) (emphasis added). Here, the Court entered such an order on October 14, 2020, and the FEC acted on January 26, 2021—104 days later. Whether the appropriate deadline was the 30 days specified by statute or the 90 days that this Court gave in its default judgment order—a question the Court need not decide—the Commission failed to *timely* act. That is a significant factual distinction from both *45Committee* and *Heritage Action*, in which the FEC timely conformed with the delay court's order declaring its initial failure to act to be contrary to law, and thus the citizen-suit court dismissed for lack of subject-matter jurisdiction. *See 45Committee*, 2023 WL 2825704, at *2–3 (deadlocked reason-to-believe vote occurred "within the 30-day period that the delay court had given the FEC to act"); *Heritage Action*, 2023 WL 4560875, at *10 (same). Thus, in this case, unlike those cases, the statutory preconditions to suit are met, and the Court may hear the case consistent with its statutory grant of jurisdiction.

Iowa Values has no response to the problem of failure to timely conform with the default judgment order in the delay suit—except to attempt to relitigate whether the FEC's initial failure to act that prompted the delay suit was reasonable because the FEC lacked a quorum for much of the pendency of the administrative complaint. *See* Def.'s Reply at 22–24. The Court already rejected that argument in its motion to dismiss opinion. *See* Mot. to Dismiss Op., 573 F. Supp. 3d

at 254. To the extent that Iowa Values now seeks to assert a variation on that argument as it relates

to the FEC's subsequent failure to conform to the Court's default judgment order in the delay suit,

on grounds that the Commission lacked a quorum for some time after that order was entered, that

argument is meritless. By its plain text, § 30109(a)(8)(C) authorizes a citizen suit anytime the FEC

"fail[s]" "to conform with [the delay court's] declaration within 30 days"—not merely where that

failure is unreasonable.

For these reasons, although the Court agrees entirely with the legal analysis in

*45Committee* and *Heritage Action*, the Court concludes that it has subject-matter jurisdiction over

this case given the unique procedural posture.

### C. The Case Is Not Prudentially Moot

To recap, the Court has now assured itself that it has jurisdiction. Even despite the FEC's

newly revealed action, CLC had Article III standing at the outset to prosecute this citizen suit and

never lost it; and the statutory preconditions to suit being met, there is no jurisdictional bar

prohibiting the Court from hearing the case. That being said, in certain rare cases, a court that

*could* lawfully exercise subject-matter jurisdiction is justified in declining to do so because the

case is prudentially moot. *See Gordon*, 85 F. Supp. 3d at 84–85. Iowa Values contends that this is

just such a case. The Court disagrees.

Iowa Values argues that the Court should find this case prudentially moot for three main

reasons. *See* Def.'s Mot. for S.J. at 16–24. None of them is sufficient to convince the Court to take

the extraordinary step of declining to exercise its jurisdiction.

First, Iowa Values argues that since the FEC declined to investigate CLC's allegations and

has now even formally closed the administrative file, an adjudication on the merits of this citizen

suit would necessarily result in a second decision that is either duplicative of or contradictory to

the FEC's, which would undermine Congress's decision to "vest[] the Commission with primary and substantial responsibility for administering and enforcing the Act," *see FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981) (internal quotation marks and citation omitted), and "work a transfer of prosecutorial discretion from the Commission to the courts." *Common Cause v. FEC* 489 F. Supp. 738, 743–44 (D.D.C. 1980) (internal quotation marks and citation omitted). Relatedly, Iowa Values contends that this case is now a *de facto* challenge to the deadlock dismissal decision itself rather than a *de novo* determination of allegations on which the Commission failed to act.

That argument is flawed in multiple respects. To start, the FEC merely failed to find *reason to believe* a violation had occurred; it never formally reached a final adjudication on the merits of CLC's complaint, so there is no potential for a squarely duplicative or contradictory adjudication here no matter how the Court decides the merits. And because the controlling commissioners issued their statement of reasons over a year after the failed reason-to-believe vote, if CLC were to file a suit directly challenging the deadlock dismissal as contrary to law, the Court would actually be *prohibited* under *ECU* from treating that statement of reasons as the Commission's justification for the dismissal. *See ECU*, 69 F.4th at 920–23. Moreover, by enacting § 30109(a)(8), Congress affirmatively created a narrow but unambiguous exception to the FEC's primary jurisdiction and prosecutorial discretion over civil FECA violations. Section 30109(a)(8)(A) "allows the Commission a maximum of 120 days, beginning from the date the complaint is filed, in which to conduct its investigation without judicial intrusion." *In re Carter-Mondale Reelection Comm., Inc.*, 642 F.2d 538, 543 (D.C. Cir. 1980). If the Commission sleeps on that right, it risks a court declaring its inaction contrary to law. And if even that does not wake the Commission up within 30 days, the Commission risks the complainant taking prosecutorial discretion into its own

hands by filing a citizen suit.[6] Finally, while "considerations of prudence and comity for coordinate branches of government [might] counsel the court to stay its hand" if the FEC were asserting those considerations itself, *Chamber of Commerce*, 627 F.2d at 291, the FEC is not a defendant in this case. The Court sees no reason why it should give a private civil defendant the benefit of comity for a nonparty government agency.

Second, Iowa Values argues that allowing this case to proceed would undermine the purpose of a delay suit under § 30109(a)(8) by resulting in a lengthier, not shorter, period of time before the matter is put to rest. While that argument has some merit as a policy matter, it is difficult to square with the system that the plain text of the statute enacts. The statute expressly sets out a pair of specific deadlines for action by the FEC: an initial deadline of 120 days after the date the administrative complaint is filed, failing which the complainant may file a delay suit; and a further deadline of 30 days after the court's order declaring the inaction contrary to law, failing which the complainant may bring a citizen suit. 52 U.S.C. §§ 30109(a)(8)(A), (C). True, in this case, the Commission (unbeknownst to either party) took its untimely action on CLC's complaint before CLC filed its citizen suit. But even where that is not the case, it is always possible that the Commission will act on a complaint after a citizen suit is filed, even right up until the minute before the court decides the merits of the case. Given how long it takes to adjudicate a civil case, it is almost inconceivable that Congress did not contemplate the possibility that a citizen suit could ultimately result in a lengthier process. Yet Congress put nothing in the text of the statute to prevent that from happening.

---

[6] CLC takes the more sweeping position that once the statutory preconditions to a citizen suit are met, or at least after one is filed, the FEC loses its jurisdiction over the complaint entirely. *See* Pl.'s Opp'n at 36–38. But because this case does not involve a direct challenge to the FEC's deadlock dismissal of CLC's complaint, the Court need not decide that issue. The Court has jurisdiction, whether exclusive or concurrent, and intends to exercise it.

Third, Iowa Values argues that allowing this suit to proceed would "reward" the commissioners who intentionally concealed the FEC's action on the administrative complaint. To be clear, regardless of who is ultimately to blame, the Court does not condone the Commission's behavior. It is unfortunate that there has been an apparent breakdown in respect for the institutional norms that Congress must have assumed the commissioners would follow when it created a bipartisan body that requires majority support for even the most basic administrative actions. But the blame is not CLC's. It would be unfair to deprive a plaintiff of its lawful right of action simply because it stumbled into that right through a third party's dysfunction. Moreover, as explained above, CLC obtained its right to sue when the FEC failed to take even its deadlocked reason-to-believe vote until after the deadlines set by the statute and the Court's order. Allowing the citizen suit to proceed does not reward the three commissioners' later concealment of that vote, because the statutory preconditions to suit would be met even if the parties and the Court knew the entire administrative history from the beginning.

In sum, though Iowa Values raises a number of legitimate policy concerns, they are insufficient to convince the Court to exercise its equitable discretion and dismiss the case as prudentially moot.

### IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it has jurisdiction and that the case is not prudentially moot. Accordingly, the Court will **DENY** Iowa Values's motion for summary judgment and allow the case to proceed to adjudication of the merits. A separate Order shall issue this date.

Date: August 2̶1̶, 2023

Royce C. Lamberth
United States District Judge