**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAMPAIGN LEGAL CENTER**, | |
| *Plaintiff,* | |
| **v.** | Case No. 1:21-cv-389-RCL |
| **IOWA VALUES**, | |
| *Defendant.* | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Campaign Legal Center (CLC) seeks to vindicate alleged violations of the Federal Election Campaign Act (FECA) by defendant Iowa Values. CLC filed an administrative complaint against Iowa Values with the Federal Election Commission (FEC) in 2019. CLC then sued the FEC for failing to act in a timely manner on its complaint. When the FEC failed to appear to defend against that suit, this Court entered default judgment against the FEC, declaring its failure to act on CLC's complaint contrary to law. After several months without any apparent action by the FEC, CLC filed this suit against Iowa Values, seeking an adjudication by this Court of the underlying alleged FECA violations. On August 31, 2023, the Court issued an opinion denying Iowa Values' motion for summary judgment. In the wake of the decision followed three motions that are now before the Court.

Iowa Values has moved for the Court to certify its order for interlocutory appeal. The Court declines to do so because Iowa Values has failed to show a substantial ground for difference of opinion on the controlling questions of law involved in the order.

In addition, CLC has renewed its earlier motion to compel discovery responses from Iowa Values, which has cross-moved for a protective order. The Court does not reach the merits of three of Iowa Values' arguments because Iowa Values waived them by not raising them in its

opposition to the initial motion to compel, and because Iowa Values filed its cross-motion without complying with Local Civil Rule 7(m). And the Court rejects Iowa Values' remaining argument as meritless.

Therefore, the Court will **DENY** Iowa Values' motion for certification, **GRANT** CLC's renewed motion to compel, and **DENY** Iowa Values' cross-motion for a protective order.

## I.   BACKGROUND

### A.  Statutory and Regulatory Background

As the Court explained in its opinion denying Iowa Values' motion for summary judgment, *Campaign Legal Ctr. v. Iowa Values* (MSJ Op.), No. 1:21-cv-389 (RCL), 2023 WL 5651734, at *1 (D.D.C. Aug. 31, 2023), the FEC is composed of six commissioners, no more than three of whom may belong to the same political party. 52 U.S.C. § 30106(a)(1). By statute, "[a]ll decisions of the Commission with respect to the exercise of its duties and powers under [FECA] shall be made by a majority vote of the members of the Commission." *Id*. § 30106(c). Furthermore, certain actions require a vote of at least four commissioners, regardless of the number of abstentions or vacancies. *Id*.

FECA permits "[a]ny person who believes a violation of this Act or of chapter 95 or chapter 96 of Title 26 has occurred" to "file a complaint with the Commission." 52 U.S.C. § 30109(a)(1). Once the FEC receives such a complaint, it can vote to do one of four things: (1) find "reason to believe" a violation occurred and investigate the complaint further, (2) dismiss the complaint, (3) dismiss the complaint with admonishment, or (4) find "no reason to believe" a violation occurred. *See* 72 Fed. Reg. 12545, 12545–46 (Mar. 16, 2007). All four actions require a vote of at least four commissioners. *Id*. Thus, when the commissioners deadlock by a vote of 3-3, the vote fails. But FECA's implementing regulations also contemplate an additional procedural step after a vote on a complaint fails: a "vote[ ] to close [ ] an enforcement file." 11 C.F.R. § 5.4(a)(4).

If the FEC dismisses an administrative complaint or fails to act on it, the complainant may turn to the courts for recourse through a two-part procedure set out in 52 U.S.C. § 30109(a)(8). First, "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party under [§ 30109(a)(1)] or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia." *Id.* § 30109(a)(8)(A).  The FEC may authorize counsel to appear and defend such a case only by a vote of four or more commissioners. *See id.* §§ 30106(c), 30107(a)(6).  Whether or not the FEC appears, the court hearing the petition "may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days." *Id.* § 30109(a)(8)(C).  Second, if the FEC fails to conform within 30 days, "the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." *Id.*

## B.  Factual and Procedural Background

The factual background of this case is set forth in this Court's previous Memorandum Opinions denying Iowa Values' motion to dismiss, *see Campaign Legal Ctr. v. Iowa Values* (MTD Op.), 573 F. Supp. 3d 243 (D.D.C. 2021), and denying its motion for summary judgment, *see* MSJ Op., 2023 WL 5651734.[1]  The Court will assume familiarity with those Opinions and provide only as much background as is necessary to resolve the motions now before the Court.

### 1.  CLC's Administrative Complaint, Delay Suit, and Citizen Suit

Under federal campaign finance law, a political committee that receives contributions or makes expenditures of over $1,000 annually is required to register with the FEC and "file periodic reports disclosing its contributions, expenditures, and debts."  Compl., ECF No. 1, at 1; *see* 52

---

[1] The more recent opinion includes a timeline summarizing pertinent dates.  *See* MSJ Op., 2023 WL 5651734, at *3.

Case 1:21-cv-00389-RCL   Document 99   Filed 01/08/24   Page 4 of 27


U.S.C. §§ 30102–04.  CLC alleges that Iowa Values broke the law by "flouting these rules while accepting contributions and running campaign advertisements for" U.S. Senator Joni Ernst.  MTD Op., 573 F. Supp. 3d at 250.

On December 9, 2019, CLC filed an administrative complaint with the FEC, pursuant to 52 U.S.C. § 30109(a)(1), alleging that Iowa Values had not registered as a political committee and reported as required.  *Id.*  But the FEC gave no indication that it had acted on the matter.  *Id.*  After 194 days of radio silence, CLC brought a petition against the FEC in this Court pursuant to 52 U.S.C. § 30109(a)(8)(A).  *Id.*  Yet the FEC failed to respond or enter an appearance.  *Id.*  The Court then granted CLC's motion for default judgment against the FEC.  Order, ECF No. 14, *Campaign Legal Center v. Fed. Election Comm'n*, No. 20-cv-1778 (RCL) (D.D.C. Oct. 14, 2020).  Finding that the FEC's failure to act on the administrative complaint was "contrary to law," the Court ordered the FEC to act upon CLC's administrative complaint within 90 days.  *Id.*  Yet the FEC took no action within either the 30-day period established by 52 U.S.C. § 30109(a)(8)(C) or the 90-day window given by the Court.  On February 11, 2021, the Court held that because the FEC had not conformed to its Order, CLC could proceed with a civil action directly against Iowa Values.  Order, ECF No. 24, *Campaign Legal Center v. Fed. Election Comm'n*, No. 20-cv-1778 (RCL) (Feb. 11, 2021).

The next day, CLC filed this action against Iowa Values.  *See* Compl.  Iowa Values moved to dismiss for lack of jurisdiction and failure to state a claim.  ECF No. 13.  The Court denied this motion, rejecting Iowa Values' arguments that (1) the FEC's failure to act was not contrary to law, (2) FECA's citizen-suit provision was unconstitutional, (3) CLC was not itself injured by Iowa Values' alleged FECA violations and thus lacked standing to sue, and (4) the complaint failed to plausibly allege any FECA violations.  *See* MTD Op., 573 F. Supp. 3d. at 249, 252–60.

After the Court's decision, the case proceeded to discovery.  Iowa Values filed a motion to compel the FEC to produce documents.  ECF No. 31.  For its part, CLC filed a motion to compel Iowa Values to "produce (1) overdue responses to Plaintiff's First Requests for Production and Plaintiff's First Set of Interrogatories and (2) certain items responsive to Plaintiff's First Requests for Production, which Defendant has refused to produce absent an order from this Court."  Pls.' Compel Mot., ECF No. 36, at 1.  Iowa Values moved to stay the case at least until the Court could determine the status of the FEC's deliberations concerning the complaint.  ECF No. 38.  It also opposed CLC's motion to compel, making two arguments: First, that the motion should be denied because of the motion to stay, and second, because documents created or obtained by Iowa Values after CLC filed its complaint on December 19, 2019, and which do not reference activity before that date, are irrelevant and outside the Court's Scheduling Order outlining this case's discovery plan.  *See* Defs.' Opp'n to First Compel. Mot., ECF No. 39, at 2, 6–7; *see also* Scheduling Order, ECF No. 28.

### 2.  The Court's Denial of Summary Judgment

While the discovery motions were pending, the FEC made public that it had voted on CLC's complaint, but on January 26, 2021 had failed by a deadlocked 3-3 vote to find reason to believe that Iowa Values had violated FECA.  MSJ Op., 2023 WL 5651734 at *3.  As this Court has observed, "the failed reason-to-believe vote occurred two weeks after the deadline for action that the Court imposed in the delay suit, and over two months after the 30-day minimum contemplated by the statute before a plaintiff may file a citizen suit, but the day before CLC filed its motion for the Court to declare that the FEC had failed to conform and over a week before the Court granted that motion and entered its order authorizing the citizen suit."  *Id.*  The FEC also revealed that on January 28, 2021, and again on January 11, 2022, it had failed by a deadlocked

3-3 vote to close the file on CLC's complaint.  *Id*.  In May 2022, the three Republican commissioners who voted against finding reason to believe a violation had occurred gave a statement of reasons for that earlier vote.  *Id.*  They cited "what they saw as evidentiary shortfalls as to certain allegations and legal errors as to others" and  "explained that the two Democratic commissioners and one independent commissioner who voted to find reason to believe were engaged in a strategy across multiple matters, including this one, of deliberately voting against administratively closing files, appearing in court, or making records public, in order to artificially trigger FECA's citizen-suit provision."  *Id.*  Not until August 29, 2022—about a year and a half after CLC filed its citizen suit—did the FEC succeed in closing the file on CLC's complaint, by a vote of 4-1.  *Id.*

On December 2, 2022, after learning of the FEC's votes on CLC's administrative complaint, Iowa Values filed a motion for summary judgment.  *Id.* at *4.  The Court denied as moot Iowa Values' motion to stay, and denied CLC's still-pending motion to compel without prejudice to refiling, in order to save the time and expense of engaging in discovery that was not relevant to the summary judgment motion in the event it was granted.  *Id.*  On August 31, 2023, the Court denied Iowa Values' motion for summary judgment.  First, it held that even though it was now known that the FEC had taken a failed reason-to-believe vote before CLC commenced its citizen suit and had eventually closed the administrative file, CLC has Article III standing based on its informational injury.  *Id.* at *5.  It also held that the FEC's release of its voting records did not render the case constitutionally moot.  *Id.*  Second, it concluded that the Court has subject matter jurisdiction under FECA since the requirement for a citizen suit that the FEC fail to act was met in this case "because the first statutorily significant 'action,'" namely the January 26, 2021 deadlocked reason-to-believe vote, "occurred well after the deadline by which the FEC must act

before a complainant may file citizen suit." *Id.*  Finally, the Court concluded that the case was not prudentially moot.  *Id.* at *10.

### 3.  The Present Motions

Before the Court are three motions that followed the Court's denial of summary judgment.

After the Court issued its decision, Iowa Values moved to certify for interlocutory appeal the Court's order denying summary judgment.  Defs.' Cert. Mot., ECF No. 84.  CLC filed an opposition, Pls.' Opp'n to Cert. Mot., ECF No. 88, and Iowa Values filed a reply, Defs.' Reply in Support of Cert. Mot., ECF No. 93.

In addition, CLC renewed its motion to compel.  Pls.' Renewed Compel. Mot., ECF No. 85.  CLC requested that Iowa Values be compelled to produce "(1) overdue responses to Plaintiff's First Interrogatories ('ROGs') and Requests for Production ('RFPs'), served February 9, 2022, and (2) documents and communications responsive to Plaintiff's discovery requests that were created or obtained after December 19, 2019."  *Id.* at 1.  In response, Iowa Values filed a combined opposition and cross-motion for a protective order.  Defs.' Cross-Mot., ECF No. 90.  Iowa Values opposed the motion to compel on one of the grounds asserted in its previous opposition— concerning post-2019 documents—but also advanced three additional objections.  *See id.* at 1–2. CLC filed a combined opposition to Iowa Values cross-motion and a reply in support of its own motion.  Pls.' Opp'n to Cross-Mot., ECF No. 95.  Iowa Values filed a reply.  Defs.' Reply in Support of Cross-Mot., ECF No. 97.

These motions are ripe for review.

## II.   LEGAL STANDARDS

### A.  Certification under 28 U.S.C. § 1292(b)

A district court may certify for interlocutory appeal an otherwise unappealable order if (1) a controlling question of law is invovled; (2) substantial ground for difference of opinion on

the controlling question of law exists; and (3) an immediate appeal from the order may materially advance the termination of litigation. 28 U.S.C. § 1292(b).  A "controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *APCC Servs., Inc. v. Sprint Commc'ns Co., L.P.*, 297 F. Supp. 2d 90, 95–96 (D.D.C. 2003) (internal quotation marks and citation omitted).  A movant may not establish a substantial ground for difference of opinion through "[a] mere claim that the district court's ruling was incorrect." *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 104 (D.D.C. 2005) (internal quotation marks and citation omitted). Rather, this is "'often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits[,]' or 'a split within this district on [the disputed] issue[.]'" *Azima v. RAK Inv. Auth.*, 325 F. Supp. 3d 30, 34 (D.D.C. 2018) (Brown Jackson, J.) (alteration in the original) (quoting *APCC Servs.*, 297 F. Supp. 2d at 97–98 and *Nat'l Cmty. Reinvestment Coalition v. Accredited Home Lenders Holding Co.*, 597 F. Supp. 2d 120, 122 (D.D.C. 2009)). But the key responsibility of the district court is to "analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." *APCC Servs.*, 297 F. Supp. 2d at 98.

The movant bears the burden of not only establishing the three certification elements but also of demonstrating exceptional circumstances that warrant a departure from the general rule that appellate review must await final judgment. *Azima*, 325 F. Supp. 3d at 34.  "[I]nterlocutory appeals are generally disfavored, given the strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *Id.* at 34–35 (internal quotations and citation omitted).  Accordingly, it is "well established that section 1292(b) should be applied in relatively few situations[.]" *Id.* at 35 (internal quotations and citation

omitted); *see also Kennedy v. District of Columbia*, 145 F. Supp. 3d 46, 51 (D.D.C. 2015) ("Interlocutory appeals are infrequently allowed." (internal quotations and citation omitted)).

### B. Discovery

#### 1. Motion to Compel

Parties may pursue discovery by submitting document production requests under Federal Rule of Civil Procedure 34 or by submitting interrogatories under Rule 33.  "When a party objects to a discovery request, the requesting party may—after first attempting to resolve the issue by conferring with the refusing party—file a motion to compel." *Lamaute v. Power*, 339 F.R.D. 29, 35 (D.D.C. 2021) (citing Fed. R. Civ. P. 37(a)(1)).  Rule 37 permits a party to file a motion to compel discovery if, among other reasons, the opposing party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . requested under Rule 34." Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii)–(iv).  An incomplete answer or response is treated as a failure to respond.  Fed. R. Civ. P. 37(a)(4).

The motion to compel is subject to a burden-shifting framework.  The moving party bears the initial burden of showing that the requested information is relevant.  *Lamaute*, 339 F.R.D. at 35.  Relevance is construed broadly in the discovery context as "'any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  The moving party also bears the burden of showing that the opposing party's response to their request is inadequate or incomplete.  *Barnes v. District of Columbia*, 289 F.R.D. 1, 21 (D.D.C. 2012).  After establishing relevance and incompleteness, "the burden shifts to the party opposing discovery to show why the discovery should not be permitted." *Lamaute*, 339 F.R.D. at 35.  "Courts consider the prior efforts of the parties to resolve

the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C) when deciding whether to grant a motion to compel." *Barnes*, 289 F.R.D. at 5–6.  The party opposing discovery must "show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery." *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 27 (D.D.C. 2012)).

### 2.  Motion for Protective Order

Federal Rule of Civil Procedure 26(c)(1) permits courts upon a showing of  "good cause" to issue protective orders to guard against "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  "[T]he 'good cause' standard . . . is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case."  *United States v. Microsoft Corp.*, 165 F.3d 952, 960 (D.C. Cir. 1999).  But the party requesting a protective order bears the burden of establishing that it should be granted.  *See United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES*, 304 F.R.D. 10, 12 (D.D.C. 2014); *Doe v. Provident Life & Accident Ins. Co.*, 247 F.R.D. 218, 221 (D.D.C. 2008).  To satisfy this burden, the requesting party "must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."  *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).

### C.  Local Civil Rule 7(m)

Civil Rule 7(m) of the Local Rules for the United States District Court for the District of Columbia reads:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with  opposing counsel  in a  good-faith  effort to determine

> whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement.  The duty to confer also applies to non-incarcerated parties appearing pro se.  A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

LCvR 7(m).  When a nondispositive motion is at issue, the Local Civil Rule "therefore imposes twin duties of consultation and certification."  *Steele v. United States*, No. 1:14-cv-1523 (RCL), 2023 WL 6215790, at *3 (D.D.C. Sept. 25, 2023).  The rule's purposes are "to encourage informal resolution to such disputes, or at least to reduce or narrow the issues the Court will consider."  *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006).

The threshold question for Local Civil Rule 7(m) is whether the motion in question is "nondispositive."  The D.C. Circuit has defined "dispositive motion" to "include[] a motion that, if granted, would result either in the determination of a particular claim on the merits or elimination of such a claim from the case."  *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997).

If the motion is nondispositive, the next issue is the duty to confer.  "The obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation."  *Pogue*, 235 F.R.D. at 529.  That means that the Local Rule "at least 'contemplates that counsel will speak to each other.'"  *U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006) (quoting *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194 (D.D.C. 2003)), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008).  A party must therefore take "real steps" to confer with its opponent, such as contacting the other side's counsel "by telephone or within a reasonable period prior to filing the motion."  *Id.* at 52.  But just conferring is not enough: the party must also certify whether it has done so and whether the motion is opposed.  LCvR 7(m).

If Local Civil 7(m) has been violated, that raises the question of remedy.  As the Court recently explained, "[t]his Court has often denied motions for failure to comply with Rule 7(m) and its precursors" although "[u]nder the right circumstances, however, a nonconforming motion will not be denied."  *Steele*, 2023 WL 6215790, at *3–4 (collecting cases).  "Therefore, when a party has failed to respect the requirements of Local Rule 7(m), the Court will exercise its discretion in selecting the remedy, bearing in mind the purposes of the rule."  *Id.* at *4.

### III.   DISCUSSION

### A.  The Court Will Not Certify an Interlocutory Appeal

Since Iowa Values has not established the prerequisites for certification under Section 1292(b), the Court declines to certify interlocutory appeal of its order denying Iowa Values' motion for summary judgment.  The Court agrees with Iowa Values that the order involves controlling questions of law and that an appeal may materially advance the ultimate termination of litigation, but Iowa Values has failed to show a substantial ground for difference of opinion on those questions.

### 1.  The Order Involves Controlling Questions of Law

Iowa Values is correct that the order denying summary judgment involves controlling questions of law.

Iowa Values identifies two controlling questions of law: First, whether CLC alleges an informational injury sufficient for Article III standing when it has sued a private party and when the FEC has voted to close the file on the complaint, and second, whether FECA grants the Court subject matter jurisdiction over CLC's citizen suit despite FEC's deadlocked, untimely reason-to-believe vote.

Both questions go to whether the Court has subject matter jurisdiction over this case.  *See, e.g.*, *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (classifying lack of

standing as a defect in subject matter jurisdiction).  If the Court was wrong to find subject matter jurisdiction, it would have to dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).  For that reason, either issue "would require reversal if decided incorrectly" and would "materially affect the course of litigation."  *APCC Servs.*, 297 F. Supp. 2d. at 95–96.  Indeed, the D.C. Circuit has recognized that the question of whether the district court has jurisdiction is a proper question for certification under Section 1292(b).  *See Al Maqaleh v. Gates*, 605 F.3d 84, 88 (D.C. Cir. 2010) (noting that the D.C. Circuit accepted a case for interlocutory review after the district court certified the question of whether the court had jurisdiction).  The Court's resolution of these issues against Iowa Values was essential to its Opinion.[2]  True, the opinion was "fact-bound," Pls.' Opp'n to Cert. Mot. at 10, but the denial of summary judgment depended on matters of constitutional and statutory interpretation, not the resolution of factual issues.

Iowa Values has therefore established the existence of controlling questions of law.

## 2. Immediate Appeal From the Order May Materially Advance Ultimate Termination of Litigation

Appeal from the order may materially advance ultimate termination of litigation for essentially the same reason that the Court finds the order to contain controlling questions of law. If the D.C. Circuit were to hold that CLC lacks Article III standing or the Court lacks jurisdiction under FECA, this case would be dismissed for lack of subject matter jurisdiction.

---

[2] CLC contends that "rather than turning on a controlling question of law, the Court's ruling rested on its finding, as a matter of undisputed fact, that the FEC failed to conform with an order directing it to act on CLC's administrative complaint within the requisite time period." Pls.' Opp'n to Cert. Mot. at 9.  This is incomplete.  The Court held that CLC had Article III standing and that the Court had subject matter jurisdiction under FECA.  Had the Court concluded otherwise, it would have granted Iowa Values' motion for summary judgment.

### 3.  No Substantial Grounds for Difference of Opinion Exists on the Controlling Questions of Law

Iowa Values has shown no substantial grounds for difference of opinion on whether CLC has Article III standing and whether the Court has jurisdiction under FECA.  The Court of course recognizes that it may decide a question differently from other reasonable jurists.  Yet certification for interlocutory appeal imposes a high bar that Iowa Values has not cleared.

Iowa Values contends that neither the Supreme Court nor the D.C. Circuit have expressly addressed the two questions at issue here.  Defs.' Cert. Mot. at 11.  But the lack of other judicial decisions, though not dispositive, actually undermines Iowa Values' argument.  It is harder to establish that other judges would decide an issue differently when none have yet had occasion to consider it.   And "although the requirement that there be substantial grounds for difference of opinion is sometimes satisfied when there are novel and difficult questions of first impression in a case," the novel questions must "present the sort of exceptional circumstances [necessary to] justify a departure from the basic policy of postponing appellate review."  *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, No. 13-cv-1995 (ABJ), 2014 WL 12644263, at *2 (D.D.C. July 30, 2014) (internal quotation marks and citation omitted).  Here, Iowa Values has failed to establish such exceptional circumstances because its criticisms of the Court's ruling are unpersuasive.

Starting with jurisdiction under FECA, Iowa Values fails to justify deviating from the plain meaning of the statute.  One reason a court may decline to certify an interlocutory appeal is if "the ruling was based on an application of the plain language of the pertinent" statute and the litigant "has not pointed to any precedent that would supply the grounds for a difference of opinion."  *Baylor*, 2014 WL 12644263, at *1–2.  Here, the Court's ruling on the jurisdictional question was based on the plain meaning of FECA because "[b]y its plain text, § 30109(a)(8)(C) authorizes a citizen suit anytime the FEC 'fail[s]' 'to conform with [the delay court's] declaration within 30

days[.]'" MSJ Op., 2023 WL 5651734 at *9 (quoting 52 U.S.C. § 30109(a)(8)(C)).  Iowa Values

suggests the statute contains a hidden exception to this rule, according to which a citizen suit

cannot proceed if the FEC, having missed the 30-day deadline, eventually acts on the complaint.

*See* Defs.' Cert. Mot. at 13.

But Iowa Values' argument is inconsistent with the statute.  The only textual argument

Iowa Values can muster is that because the statute authorizes a complainant to bring in its own

name "a civil action to remedy the violation involved in the original complaint" when the FEC

fails to "conform with" the court's declaration within 30 days, 52 U.S.C. § 30109(a)(8)(C), then if

the FEC at any point finds no reason to believe a violation has occurred, there is suddenly no

"violation" left to "remedy."  Defs.' Cert. Mot. at 13–14.  That argument makes little sense, as it

would nullify the citizen suit provision by permitting the FEC to flaunt its deadline without

consequences.  At any rate, Iowa Values' argument relies on a slight-of-hand, because as the Court

has already explained, in this case "the FEC merely failed to find *reason to believe* a violation had

occurred; it never formally reached a final adjudication on the merits of CLC's complaint."  MSJ

Op., 2023 WL 5651734, at *10.[3]  Iowa Values cannot escape the statute's plain meaning.

Moreover, Iowa Values  "has not pointed to any precedent that would supply the grounds

for a difference of opinion."  *Baylor*, 2014 WL 12644263, at *1–2.  Even worse, it fails to address

a contrary precedent: the D.C. Circuit has observed that Section 30109(a)(8)(A) "allows the

Commission a maximum period of 120 days, beginning from the date the complaint is filed, in

---

[3] A further problem for Iowa Values is that even if an untimely FEC deadlocked reason-to-believe vote could affect a citizen suit that is already underway, such a vote could certainly have no such effect when, as in this case, it lacked a contemporaneous explanation.  *See* MSJ Op., 2023 WL 5651734, at *3.  As the Court recognized, "because the controlling commissioners issued their statement of reasons over a year after the failed reason-to-believe vote, if CLC were to file a suit directly challenging the deadlock dismissal as contrary to law, the Court would actually be *prohibited* under [*End Citizens United PAC v. FEC* (ECU), 69 F.4th 916 (D.C. Cir. 2023)] from treating that statement of reasons as the Commission's justification for the dismissal."  *Id.* at *10 (citing *ECU*, 69 F.4th at 920–23).

which to conduct its investigation without judicial intrusion."  MSJ Op., 2023 WL 5651734, at *10 (quoting *In re Carter-Mondale Reelection Comm., Inc.*, 642 F.2d 538, 543 (D.C. Cir. 1980)).[4]

Next, Iowa Values' Article III argument fails because it misunderstands Supreme Court precedent.  Iowa Values suggests that even if CLC has standing to bring an action against the FEC for its informational injury, it may lack Article III standing to sue a private party.  *See* Defs.' Cert. Mot. at 12; Defs.' Reply in Support of Cert. Mot. at 9 ("Although informational injury is clearly established to bring a case against the FEC . . . it is not obvious that informational injury is sufficient for a suit against a private party.").  But the very cases Iowa Values cites actually contradict its position.  Iowa Values argues that "the Supreme Court caselaw involving statutorily created private rights of action has consistently curtailed such standing in the recent years."  Defs.' Cert. Mot. at 12 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and *Spokeo, Inc. v. Robbins*, 578 U.S. 330 (2016)).  Yet those decisions indicate that Article III standing turns on the nature of the *plaintiff*, not the *defendant*: In both cases the Court applied the same formal standing standards to suits against private defendants as it has applied in cases against governmental defendants.  *See also Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("The standing inquiry focuses on whether the *plaintiff* is the proper party to bring this suit . . .") (emphasis added).

Ultimately, Iowa Values cannot show more than "[m]ere disagreement" with the Court's decision, which is not a substantial ground for difference of opinion.  *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996).  Iowa Values' "certification motion provides no evidence of a circuit split, conflicting decisions among the judges in this district amidst a dearth of case law

---

[4] Iowa Values also argues that CLC's injury is not redressable, and CLC thus lacks Article III standing, "because the FEC has already determined, via the reason-to-believe vote and subsequent vote to close the file on CLC's administrative complaint, that there is no reason to believe that a violation of law occurred."  *See* Defs.' Cert. Mot. at 12–13.  But again, under Section 30109(a)(8)(A), once the FEC fails to timely act on the complaint, the question of whether a violation occurred may be resolved through a citizen suit.

from the D.C. Circuit, or anything other than an attempt to revisit the previous, unsuccessful arguments" it had made earlier.  *See Azima*, 325 F. Supp. 3d 30 at 38.

## B.  The Court Will Grant CLC's Motion to Compel and Deny Iowa Values' Cross-Motion for a Protective Order

Iowa Values raises four arguments in opposition to CLC's renewed motion to compel Iowa Values to produce responses to CLC's First Requests for Production (RFPs) and Interrogatories (ROGs), and in support of its own cross-motion for a protective order "as to all improper aspects of Plaintiff's discovery requests."  *See* Defs.' Cross-Mot. at 2 n.1.  Iowa Values raised one of these arguments—concerning post-2019 items—in its opposition to CLC's initial motion to compel.  *See* Defs.' Opp'n to Pls.' First Compel Mot. at 6–10.  However, it acknowledges that it has now raised "additional objections" that it did not raise then.  Defs.' Cross-Mot. at 2 n.1.  Specifically, Iowa Values asserts that CLC's requests improperly approximate the ultimate relief CLC seeks, are disproportionate to the needs of the case, and demand information protected by the First Amendment.  *See id.* at 3–4.

The Court will not reach the merits of Iowa Values' three additional arguments, for two reasons.  First, Iowa Values waived these arguments by not raising them in its opposition to CLC's initial motion to compel, even though it did previously raise the proportionality and First Amendment arguments in its responses to CLC's first discovery requests.  Second, Iowa Values filed its cross-motion without complying with Local Civil Rule 7(m)'s consultation and certification requirements.  Under the circumstances, the Court will exercise its discretion to decline to reach the merits.  Although the Court does reach the merits of Iowa Values' argument for withholding post-2019 items, this fails because these items are neither excluded by the Court's

discovery order nor categorically irrelevant.  Accordingly, the Court will grant CLC's renewed motion to compel and deny Iowa Values' cross-motion for a protective order.[5]

### 1.   The Court Will Not Reach the Merits of Iowa Values' Additional Objections

The Court declines to consider Iowa Values' additional objections to CLC's motion to compel for two reasons.  First, Iowa Values waived these objections by not raising them in its opposition to CLC's initial motion to compel.  Second, Iowa Values violated Local Civil Rule 7(m)'s consultation and certification requirements for nondispositive motions.

### (i) Iowa Values Waived Its Additional Objections

By not raising its additional objections in its opposition to CLC's initial motion to compel, Iowa Values waived these arguments.  Iowa Values never raised the "ultimate issue" argument until now.  And although Iowa Values did raise its proportionality and First Amendment objections in its responses to CLC's discovery requests, that does not preserve these arguments because Iowa Values chose to omit them from its opposition to the original motion to compel.

Absent good cause, untimely objections to requests for production and interrogatories may be deemed waived.  Federal Rule of Civil Procedure 33(b)(4) provides that that "[a]ny ground" for objecting to an interrogatory "not stated in a timely objection is waived unless the court, for good cause, excuses the failure."  Fed. R. Civ. P. 33(b)(4).  Courts in this circuit have treated Rule 34 as implying a similar rule for requests for production of documents.  *See, e.g., Myrdal v. D.C.*, No. 05-cv-02351 (RCL), 2007 WL 1655875, at *3 (D.D.C. June 7, 2007).  Accordingly, "[i]n general, untimely objections to discovery requests are waived" although "[a] court may however excuse a

---

[5] For that reason, the Court will also deny Iowa Values' request for attorneys' fees and costs in connection with the motion and cross-motion.  *See* ECF No. 90-1.

failure to timely object if it finds good cause." *Caudle v. District of Columbia*, 263 F.R.D. 29, 33 (D.D.C. 2009).

Objections may be lodged not only in responding to a discovery request, but also in opposing a motion to compel.  When the parties are unable to resolve a discovery dispute, a party may file a motion to compel the opposing party to produce evidence or respond to interrogatories. *See* Fed. R. Civ. P. 37(a).  If the party opposing a motion to compel does not raise a particular argument, that argument may be deemed waived.  *Cf. Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) (explaining that under Local Civil Rule 7(b), "if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded").  Thus, a party that fails to raise an objection when opposing a motion to compel may lose the chance to make that objection later.  *See Bank of New York as Tr. of NextCard Credit Card Master Note Tr. v. Fed. Deposit Ins. Corp.*, No. 03-cv-1221 (ESH)(AK), 2006 WL 8460535, at *2 (D.D.C. May 19, 2006) (finding an objection to plaintiff's renewed motion to compel waived because the defendant "did not raise this argument in its opposition to Plaintiff's original motion to compel").  Failure to include an argument when opposing a motion to compel may constitute waiver even if the objection was raised earlier in response to a request for production or an interrogatory.  *See United States ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, No. 99-cv-1343 (RCL), 2005 WL 8178349, at *4 (D.D.C. Aug. 23, 2005) ("MHFA raises no other objections in its opposition to relator's motion to compel; therefore, any other objections have been waived."); *Sonnino v. U. Kansas Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004) ("When ruling on a motion to compel, a court generally considers only those objections that have been timely asserted in the initial responses to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel."); *Carr v. State Farm*

*Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 463 (N.D. Tex. 2015) ("[A] party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of his objection to a request, and, if he does not, he waives the objection."); *Gray v. U.S. Steel Corp.*, 284 F.R.D. 393, 396 (N.D. Ind. 2012) (holding that a party that raised objections in "its initial responses to the interrogatories" had "waived any objection to the discovery requests" in part "by failing to explain its position in response to Gray's motion to compel").

Applying these principles, Iowa Values waived its objections concerning ultimate relief, proportionality, and the First Amendment. It acknowledges that its "Opposition to the renewed Motion to Compel raises objections that were not previously raised in response to the initial Motion to Compel." Defs.' Reply in Support of Cross-Mot. at 4. It explains that it omitted these objections in order to focus on staying discovery until the FEC could act. *See id.* at 2–3. Since Iowa Values did not raise the "ultimate relief" objection to CLC's RFPs and ROGs generally until now, this argument is clearly waived.[6]

Iowa Values also waived its proportionality and First Amendment arguments, and did not preserve them merely by including them in its discovery responses. Iowa Values did broach its proportionality and First Amendment arguments in its discovery responses. *See* Defs.' Reply in

---

[6] Iowa Values made an "ultimate relief" argument only concerning one of CLC's requests for production, which was for items related to Iowa Values' fundraising. *See* Resp. to RFP, No. 5 ("Iowa Values also objects to this request to the extent it would require the disclosure of specific donor identities, in essence providing CLC, under the cloak of discovery, the ultimate relief sought through this action."). Iowa Values recognizes it "did not specifically use the words 'ultimate relief' in all of its objections." Defs.' Reply in Support of Cross-Mot. at 4; *see also* Resp. to RFP; Resp. to ROG It nonetheless contends that it raised the "ultimate relief" issue generally because its "argument that certain of Plaintiff's requests improperly seek relief requested in the Complaint is fully captured by its frequently lodged 'liability versus remedy' objection in its discovery responses." Defs.' Reply in Support of Cross-Mot. at 4. But the grounds for an objection "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Objecting on relevance to liability is entirely different from arguing that CLC is improperly attempting to obtain the ultimate relief it seeks through discovery. Since Iowa Values failed to articulate an "ultimate relief" argument for CLC's discovery requests generally until now, it has waived that argument. While it raised this argument for CLC's request for items related to fundraising activities, its failure to raise this argument in its opposition to CLC's initial motion to compel means it was waived for the same reasons CLC's other additional objections were waived.

Support of Cross-Mot. at 3 (citing Resp. to RFP, ECF No. 36-4, Nos. 1–18 and Resp. to ROG, ECF No. 36-5, Nos. 1–5 (for burdensome objection) and Resp. to RFP Nos. 1–7, 9–10, 13–18 and Resp. to ROG Nos. 1–2 (for First Amendment objection)).  Yet when Iowa Values failed to invoke these grounds in its opposition to the original motion to compel, it lost its chance to make these arguments in response to CLC's renewed motion.  *See K & R Ltd. P'ship*, 2005 WL 8178349, at *4.

    While the Court has authority to excuse Iowa Values' waiver, Iowa Values has not presented good cause to do so.  To the contrary, waiver is appropriate because Iowa Values deliberately abandoned its proportionality and First Amendment arguments as a matter of litigation strategy.  While Iowa Values does not expressly assert good cause to excuse the waiver, it suggests the Court look past its failure to assert these arguments because of the different "procedural circumstances" at the times of each motion to compel.  *See* Defs.' Reply in Support of Cross-Mot. at 3.  In particular, it contends that because the FEC's actions on the complaint were shrouded from view, Iowa Values thought it made sense to focus on the procedural argument of staying discovery rather than substantive arguments.  *See id.* at 2–3.  But Iowa Values was free to make substantive arguments, and in fact it *did* make a substantive argument concerning post-2019 documents.  *See* Defs.' Opp'n to Pls.' First Compel. Mot. at 6–10.  In any event, this explanation amounts to an acknowledgment that Iowa Values deliberately chose not to raise these arguments earlier for reasons of litigation strategy.  That is not good cause to excuse its waiver.  Indeed, it would be unfair if Iowa Values, having failed to meet its burden on these objections once, got a second chance to do so now.  Iowa Values made a choice, and now must live with it.  The Court will not excuse its waiver.

*(ii) Iowa Values Violated Local Civil Rule 7(m)*

Even if CLC had not waived its additional objections, the Court would still deny Iowa Values' cross-motion for a protective order for violating Local Civil Rule 7(m).  That rule "imposes twin duties of consultation and certification" on a party filing a nondispositive motion in a civil case.  *Steele* 2023 WL 6215790, at *3.  A motion for a protective order is plainly a nondispositive motion because if granted it would not "result either in the determination of a particular claim on the merits or elimination of such a claim from the case."  *Burkhart*, 112 F.3d at 1215.  Yet Iowa Values does not dispute that it failed to comply with either requirement of Local Civil Rule 7(m).  *See* Defs.' Reply in Support of Cross-Mot. at 5.  Indeed, counsel for Iowa Values recognized that he "missed that on the to-do list before filing."  ECF No. 96-3.  The question, then, is whether the Court should deny Iowa Values' cross-motion for a protective order on this basis.

Although Iowa Values is correct that the Court has discretion to consider a motion despite a breach of Local Civil Rule 7(m), this is not an appropriate case to do so.  Iowa Values attempts to bat away CLC's Local Civil Rule 7(m) argument as "another distraction from the substantive objections raised by Iowa Values,"  Defs.' Reply in Support of Cross-Mot. at 5, but this rule serves the important purposes "to encourage informal resolution to such disputes, or at least to reduce or narrow the issues the Court will consider."  *Pogue*, 235 F.R.D. at 529.  "This Court has often denied motions for failure to comply with Local Rule 7(m) and its precursors."  *Steele*, 2023 WL 6215790, at *3 (collecting cases).

While Iowa Values argues the Court should look past its violation of Local Civil Rule 7(m) because the protective order was filed as "'an additional procedural vehicle' to present objections to discovery," the case it relies on is inapposite.  *See* Defs.' Reply in Support of Cross-Mot. at 5 (quoting *Buie v. District of Columbia*, 327 F.R.D. 1, *7 (D.D.C. 2018)).  *Buie* differs from this

case in three key respects: it involved Federal Rule of Civil Procedure 37(a)(1) rather than Local Civil Rule 7(m), the protective order "raise[d] no new substantive issues and simply provide[d] an additional procedural vehicle for the [defendant] to present its objections to" the Rule 30(b)(6) notice in dispute, and "[a]t the time of filing, the parties had already conferred regarding the 30(b)(6) Notice and had presented their respective positions to the Court at hearings." *Buie*, 327 F.R.D. at *7.  At any rate, there is no exception to Local Civil Rule 7(m) for discovery motions. *See United States v. All Assets Held at Bank Julius Baer & Co.*, Ltd., 202 F. Supp. 3d 1, 6 (D.D.C. 2016) ("Failure to fulfill the requirements of Local Rule 7(m) is grounds for denial of a discovery motion.") (citing *Pogue*, 235 F.R.D. at 528 and *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006)).

In this case, denying Iowa Values' cross-motion serves the purposes of Local Civil Rule 7(m).  When Iowa Values filed its cross-motion, it sprung new objections on CLC and the Court. Had Iowa Values consulted with CLC, perhaps the parties could have come to "informal resolution" of these disputes, or at least "reduce[d] or narrow[ed] the issues the Court will consider." *Pogue*, 235 F.R.D. at 529.  For instance, the parties might have resolved Iowa Values' concern that CLC was seeking the identities of its donors.  *Compare* Defs.' Cross-Mot. at 15–16 (arguing that CLC has requested donor identities protected by the First Amendment) *with* Pls.' Opp'n to Defs.' Cross-Mot. at 5, 8 (contending that "CLC pre-empted Iowa Values's concerns about revealing specific donor information by asking Iowa Values to identify contributions by source category rather than donor name").  Since Iowa Values violated both prongs of Local Civil

Rule 7(m) and excusing this violation would not serve the purposes of the rule, the Court will deny

Iowa Values' cross-motion.[7]

### 2. The Court Will Not Categorically Prohibit Discovery of Documents Created or Obtained After December 19, 2019

The Court must reject Iowa Values' attempt to categorically shield all documents,

communications, and information created or obtained after the date CLC filed its administrative

complaint—December 19, 2019—unless they relate back or refer to events prior to that date.  Iowa

Values has not waived this argument because it included it in its opposition to CLC's initial motion

to compel.  *See* Defs.' Opp'n to Pls.' First Compel Mot. at 6–10.  Nor is consideration precluded

---

[7] In its reply brief, Iowa Values argues for the first time that CLC itself failed to comply with Local Civil Rule 7(m) in filing its renewed motion to compel.  *See* Defs.' Reply in Support of Cross-Mot. at 5 n.1.  Although CLC did breach one requirement of Local Civil Rule 7(m), the Court will not deny the motion on that ground.

Starting with consultation, CLC took "real steps" to confer with Iowa Values, *K & R Ltd. P'ship*, 456 F. Supp. 2d at 52, in a "good faith effort to resolve" the disputes concerning the post-2019 materials and the materials that CLC says Iowa Values had agreed to produce in response to CLC's First RFPs and ROGs, *Pogue*, 235 F.R.D. at 529.  The email exchange between counsel for each side reveals that CLC and Iowa Values attorneys discussed whether Iowa Values would continue to object to CLC's discovery requests.  *See* ECF No. 85-4 at 1–6.  Once Iowa Values told CLC that it intended to "stand on our prior objections," CLC declined to meet and confer because the parties had fruitlessly met and conferred before the initial motion to compel and these matters had already been briefed. *See id.* at 2–4.  However, Local Rule 7(m)'s consultation requirement does not necessarily require literally meeting to confer on an issue.  By inquiring about Iowa Values' position on matters that had already been briefed after consultation between the parties, CLC satisfied this requirement.

As for certification, CLC satisfied Local Civil Rule 7(m)'s provision that it state whether the motion is opposed, Pls.' Renewed Compel Mot. at 1.  But it did not state that the required discussion occurred.  Even so, this nonconformance does not justify dismissing CLC's renewed motion to compel.  As this Court recently recognized, "[w]hen this Court has struck motions for breaching Local Rule 7(m) and its precursors, that has typically been for violation of the requirement of consultation, not certification."  *Steele*, 2023 WL 6215790, at *7 (collecting cases).  In *Steele*, the Court held that it "would not meaningfully further the purposes of Local Rule 7(m)" to "declin[e] to reach the merits of plaintiffs' motion on the basis of a failure to certify, even though the plaintiffs carried out the underlying substantive obligation" and it was "clear from the face of the plaintiffs' motion that the [other party] would oppose it."  *Id.* at 7–8.  So too here.

by Local Civil Rule 7(m).[8]   In any event, Iowa Values' argument fails because post-December 2019 materials are not necessarily irrelevant or beyond the scope of the Court's discovery order.

Federal Rule of Civil Procedure 26(b) permits discovery concerning matter "that is relevant to any party's claim or defense," subject to certain limitations.   Fed. R. Civ. P. 26(b)(1). Information "need not be admissible in evidence to be discoverable," *id.*, and "the question of relevancy is to be more loosely construed at the discovery stage than at the trial," which is governed by the Federal Rules of Evidence, Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2008 (3d ed. Apr. 2023 update).

Materials that Iowa Values created or obtained after CLC filed its complaint with the FEC could still "bear[] on, or . . . reasonably could lead to other matter that could bear on" CLC's claims.   *See Shamesh*, 314 F.R.D. at 8.   To be sure, "the central question" in this case "is whether Defendant's major purpose *in 2019* was electing candidates for federal office."   Pls.' First Compel. Mot. at 6 (emphasis added).   Yet Iowa Values errs in assuming that because this case is about events in 2019 any subsequent materials that do not "relate back or refer to events prior to December 19, 2019" are necessarily irrelevant.   *See* Defs.' Cross-Mot. at 8.   When a party's purpose at a particular time is at issue, subsequent conduct by that party may be relevant.   Under the Federal Rules of Evidence, for example, post-event conduct can be relevant to proving a criminal defendant's earlier intent.   *United States v. Latney*, 108 F.3d 1446, 1450 (D.C. Cir. 1997) (holding that "the principles governing what is commonly referred to as other crimes evidence are the same whether the conduct occurs before or after the offense charged" (quoting *United States*

---

[8] Iowa Values' arguments concerning post-2019 materials are not governed by Local Civil Rule 7(m) because these arguments are essentially part of Iowa Values' opposition to CLC's renewed motion to compel, not just Iowa Values' cross-motion.   That is because CLC's motion expressly advocated for CLC's entitlement to post-2019 materials, *see* Pls.' Renewed Compel. Mot. at 3, and Iowa Values' response seeks to rebut those arguments, *see* Defs.' Cross-Mot. at 7–9.

*v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995)).  If post-event conduct is potentially relevant for purposes of admissibility, then surely it may be relevant in the context of discovery.  In this case, for instance, items relating to Iowa Value's fundraising activities or mission as of 2020 may shed light on its purpose in the preceding year.  *See* Pls.' First Compel. Mot. at 9.  The Court will not arbitrarily assume that post-complaint items are irrelevant.

Finally, Iowa Values' argument that pursuit of post-complaint items would violate the Court's January 24, 2022 Scheduling Order fails because it relies on a faulty reading of the order. The Scheduling Order limited the initial discovery phase to liability issues.  Scheduling Order at 2.  Iowa Values contends that because the Scheduling Order was issued "[p]ursuant to the Joint Report and Proposed Scheduling Order," Scheduling Order at 1, in which Iowa Values proposed that discovery commence with an initial liability phase covering the period between January 1, 2019 and December 19, 2019, ECF No. 27 at 4, the Scheduling Order implicitly incorporated Iowa Values' request to limit discovery to this time period.  Defs.' Cross-Mot. at 8.  The Court did no such thing.  Although Rule 26(b) permits a court to limit the scope of discovery, if the Court were to significantly curtail what CLC may obtain from Iowa Values, it would have done so expressly.

The Court therefore holds that Iowa Values cannot withhold items on the basis that they post-date December 19, 2019.

## IV.   CONCLUSION

For the foregoing reasons, the Court will **DENY** Iowa Values' motion for certification.  It will also **GRANT** CLC's renewed motion to compel and **DENY** Iowa Values' cross-motion for a protective order.  The Court will therefore order Iowa Values to produce all items and information responsive to CLC's First RFPs and First ROGs within 30 days of the Court's order.  The Court will also order Iowa Values to produce all post-2019 items and information responsive to CLC's

discovery requests within 30 days of the Court's order.  A separate Order consistent with this Memorandum Opinion shall issue.

Date: _____1- 8- 24_____

Royce C. Lamberth
United States District Judge